**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| PERMICO MIDSTREAM PARTNERS HOLDINGS, LLC, *et al.*, | § § § § | Case No. 20-32437 (MI)<br><br>(Joint Administration Requested) |
| Debtors.[1] | § § | |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER
COMPELLING THE TURNOVER OF BOOKS AND RECORDS DOCUMENTS
FROM PERMICO ENERGIA LLC AND ITS DIRECTORS AND OFFICERS**

> **THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**
>
> **REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this motion (this "Motion"):

**RELIEF REQUESTED**

1. The Debtors seek entry of an order, substantially in the form attached hereto (the "Order"):

---

[1] The Debtors in these chapter 11 cases and the last four digits of their federal tax identification numbers are as follows: Permico Midstream Partners Holdings, LLC (6374) and Permico Midstream Partners LLC (7902). The location of the Debtors' corporate headquarters and service address is 9301 Southwest Freeway, Suite 308, Houston, TX 77074.

    (a)    compelling Permico Energia LLC ("Energia"), the former Manager of Permico Midstream Partners Holdings, LLC ("Holdings"), and Energia's directors and officers (together with Energia, the "Former Manager"), to turn over the Debtors' books and records, including electronic data (collectively, the "Documents"), that the Former Manager possesses and/or created as it relates to the Debtors' operations, property, assets, liabilities and/or financial affairs, and

    (b)    granting related relief.

## JURISDICTION

2. The United States Bankruptcy Court for the Southern District of Texas has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157, and this Court may enter a final order consistent with Article III of the United States Constitution. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief requested herein are sections 105(a), 541(a)(1), and 542(e) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), rules 9014(a) and 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules"), and the Procedures for Complex Chapter 11 Cases in the Southern District of Texas (the "Complex Case Procedures").

## BACKGROUND

### A. Formation of the Debtors

4. On information and belief, Permico Midstream Partners LLC ("Permico") was originally formed by Energia on October 24, 2017 as a member-managed Texas limited liability company.

5. Holdings is a Texas limited liability company formed on February 5, 2019. On April 30, 2019, Energia and Conquista Energy Services, LLC ("Conquista") contributed 100% of the limited liability company interests in Permico to Holdings, effective as of February 5, 2019,

2

pursuant to a Contribution Agreement, dated as of April 30, 2019, by and between Energia and Permico (the "Contribution Agreement").

6. Contemporaneously with the execution of the Contribution Agreement, (i) Permico and Holdings entered into the Amended and Restated Limited Liability Company Agreement of Permico Midstream Partners LLC, (ii) Holdings, Energia, Conquista, and HGC Midstream INV LLC ("HGC") entered into the Amended and Restated Limited Liability Company Agreement for Holdings (the "LLC Agreement"), (iii) HGC subscribed for 100% of the Series A Membership Interests of Holdings pursuant to the Series A Limited Liability Company Subscription Agreement (the "Subscription Agreement"), (iv) HGC made a loan to Permico pursuant to that certain Development Loan Agreement (as amended and in effect on the date hereof, the "Development Loan Agreement"), by and between Permico and HGC, (v) Permico entered into the Security Agreement in favor of HGC (the "Security Agreement"), and (vi) Energia and Conquista agreed to guarantee Holdings' obligations under the LLC Agreement and the Subscription Agreement, and to indemnify Holdings and Permico in respect of their indemnification obligations under the Subscription Agreement and the Development Loan Agreement, in each case, pursuant to the Sponsor Guaranty and Pledge Agreement between HGC, Energia, Conquista, and Holdings (the "Sponsor Guaranty and Pledge Agreement").

7. Pursuant to the Development Loan Agreement, HGC loaned Permico $30,000,000.00 in order to finance the development of a Y-Grade transportation and fractionation system connecting the Permian Basin to Corpus Christi and purity product end markets, including

gathering pipelines, Y-Grade long-haul pipelines, fractionators, an ethane purity product pipeline, Y-Grade and purity product storage, and an LPG export terminal (the "Project").[2]

8. Permico granted to HGC, as security for the loans, a lien on all of Permico's right, title and interest in, to and under the Collateral (as defined in the Security Agreement), including all tangible property of Permico and all Assigned Agreements (as defined in the Security Agreement), including any and all contracts, letters of intent, easements, licenses, rights of way or other agreements granting Permico any option to purchase, or any right to lease or use, real property, or granting to Permico any other right to or interest in real property. *See* Security Agreement, § 2.1.

9. The Development Loan Agreement provides that the costs associated with the development of the Project will be paid from the proceeds of the loan from HGC and subsequent debt and equity financings in accordance with the budget attached to the Development Loan Agreement as Exhibit J-1 and Exhibit J-2 (the "Development Budget"). *See* Development Loan Agreement, § 2.3; *see also* LLC Agreement, §§ 4.5(s) and (t). Amendments to the Development Budget require HGC's approval. *See* Development Loan Agreement, § 1.1 (definition of Development Budget). In addition, Permico was restricted from entering into any contracts (including purchase orders) under which Permico is obligated to pay more than $300,000.00 over the term of the contract, unless such contract is in accordance with the Development Budget *and* would not adversely impact the (i) construction budget, (ii) the debt and equity financing plan, and (iii) the base case financial projections of Holdings, Permico and their subsidiaries for the Project (the "Project Pro Forma"). *See id*. at § 7.7(a); *see also* LLC Agreement, § 4.5(c).

---

[2] In addition to the loan amount, HGC also made a capital contribution to Permico in the amount of approximately $6.1 million.

10. The Development Budget required completion of the initial phase of the Project by July 15, 2019. *See* LLC Agreement, § 4.4(b)(i). Furthermore, the LLC Agreement required Holdings and Energia to take all actions reasonably necessary to obtain equity financing (the "Project Equity Financing") and debt financing (the "Project Debt Financing") by April 30, 2020 (the "Long-Stop Date") in an amount sufficient to pay all costs and expenses reasonably expected to be incurred by Holdings to complete the development, construction, commissioning, testing, start-up and operation of the Project through the date on which the Project has (i) achieved "substantial completion" (or the equivalent) under the definitive engineering, procurement and construction contract, and each equipment supply agreement, and (ii) become commercially operable and commences delivery of commercial volumes of natural gas liquids pursuant to one or more definitive agreements, in each case, entered into in connection with the Project. *See id*. at § 4.4(b)(iv). However, as of the Petition Date (as defined below) the Debtors have not obtained the Project Equity Financing or completed the initial phase of the Project.

11. The LLC Agreement provides HGC with certain rights upon failure to comply with the Project, including the ability to remove and replace the Manager of Holdings and the Board of Directors of Holdings. Specifically, upon any material breach by Holdings or Holdings' Manager (Energia) of its obligations under the LLC Agreement, except to the extent that such material breach would not reasonably be expected to result in a material adverse effect and is cured within thirty (30) days after Holdings or Energia has knowledge of the material breach, HGC has the right to remove and replace Holdings' Manager and the Board of Directors designated by Energia and Conquista (a "Removal Event"). *See id*. at §§ 4.4(c)(iii), (iv), and (v).[3] The failure to close on the

---

[3] In addition to the three Board members originally appointed by Energia and Conquista, HGC also appointed a Board member. *See* LLC Agreement, § 4.1(b).

Project Equity Financing by the Long-Stop Date and to redeem the HGC membership interests, along with the material breaches cited below, are Removal Events. *See id*. at § 4.4(c)(vii).

### B. Events of Default

12. On November 21, 2019, HGC sent the Debtors a Notice of Default and Removal Event, which provided Holdings and Energia notice of the alleged events of default and certain removal events discussed herein.

#### i. Line Pipe Orders and Acquisition of Line Pipe

13. In May 2019, Permico executed the following line pipe orders totaling $177,439,974.54 that, on information and belief, HGC did not consent to: (i) three purchase orders dated May 7, 2019 with Corpac Steel Products Corp. ("Corpac") for certain line pipe in the amount of approximately $29,904,520.00, $18,273,193.10, and $47,604,329.74 respectively; and (ii) three purchase orders dated May 14, 2019 with Edgen Murray Corporation ("Edgen") for certain line pipe in the amount of approximately $16,701,102.90, $35,478,460.80, and $29,478,368.00 respectively (collectively, the "Line Pipe Orders"). Upon information and belief, a significant portion of the pipe was delivered to pipe yards owned by non-debtors and title transferred to Permico on delivery.[4] HGC alleges that its liens attached to the pipe when titled passed to Permico, and any subsequent attempt to transfer title back to Corpac or Edgen would not be free and clear of HGC's lien and would constitute a preference or fraudulent transfer.

14. The Line Pipe Orders of approximately $177.4 million are more than double the total Development Budget of approximately $79.7 million and exceed the "Materials/Equipment"

---

[4] On information and belief, both Edgen and Corpac dispute that title to the line pipe transferred to the Debtors and that the line pipe is property of the estate. Edgen initiated litigation against Permico and HGC seeking a determination that title to the line pipe has not yet transferred to Permico and disputing that HGC has a lien on the line pipe transferred by Edgen. *See Edgen Murray Corporation v. Permico Midstream Partners, LLC, et al.*, Cause No. 2020-16509 in the 234th Judicial District of Harris County, Texas.

6

line item for line pipe of approximately $7.7 million. HGC alleges that Permico's execution of the Line Pipe Orders without HGC's consent and acquisition of the line pipe materially breached, among other provisions, sections 4.5(s), (t), (v), and (cc) of the LLC Agreement and section 7.7(a) of the Development Loan Agreement.

### ii. Failure to Diligently Pursue Completion of the Project in accordance with the Development Budget

15. HGC further asserts that Holdings and Energia have failed to diligently pursue completion of the development of the Project in accordance with the Development Budget, the development schedule, and consistent with the Project Pro Forma as required by section 4.4(b)(i) of the LLC Agreement. The development schedule included in the Development Budget contemplated completion of the development of the Project by July 15, 2019. HGC asserts that the initial phase of the Project has still not been completed and that Holdings and Energia have failed on several occasions to comply with the Development Budget, the development schedule and the Project Pro Forma, and such failures constitute material breaches under the LLC Agreement.

### iii. Failure to Close on Project Equity Financing and to Redeem HGC's Membership Interests

16. As discussed above, the LLC Agreement required Holdings and Energia to take all actions reasonably necessary to obtain the Project Equity Financing and the Project Debt Financing by the Long-Stop Date (April 30, 2020) and to redeem HGC's Series A membership interests if the Long-Stop Date occurred before Holdings obtained the Project Equity Financing. *See* LLC Agreement, §§ 4.4(b)(iv) and 5.5(a). As of the Petition Date, neither has occurred. The failure to obtain Project Equity Financing and to redeem HGC's Series A membership interests are also Removal Events. *See id.* at § 4.4(c)(vii).

C.  **Appointment of Board and Authority to File Bankruptcy**

17. In addition to constituting events of default under the LLC Agreement, the Development Loan Agreement, and the Sponsor Guaranty and Pledge Agreement, the above events of default would also constitute Removal Events under section 4.4(c) of the LLC Agreement. There is no credible dispute that, at a minimum, the Debtors failed to obtain the Project Equity Financing and the Project Debt Financing by the Long-Stop Date.

18. Accordingly, on May 4, 2020 just prior to the filing of the Chapter 11 Cases (as defined below), HGC exercised its right to (i) remove Energia as the Manager of Holdings and (ii) remove the members of Holdings' Board of Directors appointed by Energia and Conquista, (iii) appoint Sehwan Park, Haeyoung Lee and Howoo Shin as members of Holdings' Board of Directors.  The newly reconstituted Board of Directors consisting of Messrs. Taewon Jun, Sehwan Park, Haeyoung Lee and Howoo Shin then appointed the Chief Restructuring Officer (the "CRO") as the Manager of Holdings.  Thereafter, the new Board of Directors for Holdings (the "Board") authorized the filing of the Debtors' Chapter 11 Cases.

D.  **Chapter 11 Cases**

19. On May 4, 2020 (the "Petition Date"), the Debtors filed voluntary petitions in this Court commencing these cases under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").

20. As discussed above, the failure to obtain the Project Equity Financing and Project Debt Financing by the Long-Stop Date, and the other material breaches cited above, constituted Removal Events under the LLC Agreement.  As a result, HGC exercised its rights to replace management and authorized the filing of these cases in an effort to address issues relating to the dispute over the pipe which the Debtors believe is property of the bankruptcy estates and pursue a restructuring/liquidating transaction that maximizes value for all stakeholders.

**BASIS FOR RELIEF**

21. Section 541(a)(1) provides:

> (a) The commencement of a case under section 301, 302 or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
>
> > (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of this case.

11 U.S.C. § 541(a)(1).

22. Section 542(e) of the Bankruptcy Code provides:

> Subject to any applicable privilege, after notice and a hearing, the court may order an attorney, accountant, or other person that holds recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs, to turn over or disclose such recorded information to the trustee.

11 U.S.C. § 542(e).[5]

23. The Debtors' entitlement to the Documents is absolute. As one court has observed:

> The Bankruptcy Code creates a 'two-part scheme for turnover of property of the estate and other information related to the debtor's property or financial affairs.' Section 542(a) requires anyone holding property of the estate to deliver it to the trustee. 11 U.S.C. § 542(a). Section 542(e) allows the Court to order "an attorney, accountant or other person that holds recorded information . . . relating to the debtor's property or financial affairs" to turn over such information to the trustee, 11 U.S.C. § 542(e). Although an action for turnover under § 542(a) requires that the information requested be property of the estate, there is no such requirement in § 542(e). Therefore, whether the Attorney Files constitute property of the estate is irrelevant to the Court's determination of whether turnover is proper under § 542(e).

*Am. Metrocomm Corp. v. Duane Morris & Heckscher, L.L.P. (In re Am. Metrocomm Corp.)*, 274

B.R. 641, 652 (Bankr. D. Del. 2002); *Faulkner v. Kornman (In re Heritage Org., L.L.C.)*, 350 B.R.

---

[5] "A debtor in possession shall have all the rights . . . and powers . . . of a trustee serving in a case under this chapter." 11 U.S.C. § 1107(a). Accordingly, the rights of a trustee under Bankruptcy Code section 542(e) equally are available to the Debtor.

9

733, 737 (Bankr. N.D. Tex. 2006) (citing *In re Am. Metrocomm Corp.*); *see also Official Comm. of Unsecured Creditors v. Fleet Retail Fin. Group (In re Hechinger Inv. Co.)*, 285 B.R. 601, 606 (D. Del. 2002) ("Section 542(e) of the Bankruptcy Code mandates that [the debtors' prepetition law firm] turn over all files in its possession relating to the Debtors since those files became the property of the Debtors' estates upon the filing of the Chapter 11 petitions") (emphasis added).

24.     The Debtors submit that ample cause exists to grant the relief requested herein. Books and records are essential resources for debtors during their reorganization process. *See In re Beef N' Burgundy, Inc.*, 21 B.R. at 70 (finding that "[t]he Debtor's books, records and documents . . . are necessary to the proper conduct of Debtor's affairs in this reorganization case"). Upon information and belief, the Documents are in the possession of the Former Manager. Presently, the CRO does not have access to the Documents and is therefore limited in performing duties central to effectuating the Debtors' Chapter 11 Cases. Such duties include, but are not limited to, notifying all parties in interest of filings and the preparation of the Debtors' schedules of assets and liabilities and statements of financial affairs, which are compiled using information gathered from the Debtors' books, records, and documents relating to claims, assets, and contracts. It is imperative for the CRO to have access to the Debtors' Documents so that the Debtors can fulfill their obligations under the Bankruptcy Code. Should the relief requested herein be denied, the Debtors orderly administration of the estates may be extremely hindered, if not be made impossible to carry out.

25.     The Debtors have a right to the immediate turnover of all of the Documents because they constitute property of the Debtors' estate pursuant to section 541 of the Bankruptcy Code. *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 352 (1985) ("Upon the commencement of a case in bankruptcy, all corporate property passes to an estate represented by

the [debtor]."); *see also Sola Comm'ns., L.L.C. v. Def. Dynamics, L.L.C. (In re Sola Comm'ns., L.L.C.)*, No. 05-52696, 2005 Bankr. LEXIS 3065, at *5 (Bankr. W.D. La. 2005) (stating that section 542(e) of the Bankruptcy Code "clearly allows the court to order some 'other person' to turn over information, *including records*.") (emphasis added); *In re Hechinger Inv. Co.*, 285 B.R. at 606 (stating that section 542(e) of the Bankruptcy Code mandated the turnover of all files in counsel to the debtors' former officers and directors possession relating to the Debtors because the files "*became the property of the Debtors' estates upon the filing of the Chapter 11 petitions*.") (emphasis added).

26. The Debtors' rights to obtain copies of the Documents—including all books, documents, records and papers (including electronic data)—extends to all professionals previously and currently employed by the Debtors, including the Former Manager. 11 U.S.C. § 542(e); *see also In re Beef N' Burgundy, Inc.*, 21 B.R. 69, 70 (Bankr. N.D. Ga. 1982) (the court may require an attorney, accountant or other professional to turn over all recorded information relating to the debtor); *In re Am. Metrocomm Corp.*, 274 B.R. at 652 (same).

27. Further, and for or the avoidance of doubt, should the Former Manager assert that the Documents, in full or in part, do not constitute property of the Debtors' estate, it is well established that documents which are not property of a debtor's estate are nonetheless within the purview of section 542(e) of the Bankruptcy Code when such documents "relat[e] to the debtor's property or financial affairs." 11 U.S.C. § 542(e); *see also In re Heritage Org., L.L.C.*, 350 B.R. at 739 (stating that "documents which are not property of the estate may still be subject to turnover under Section 542(e) if they relate to the debtor's property or financial affairs, subject to any claim of privilege"); *In re Crescent Res., LLC*, 457 B.R. 506, 513 (Bankr. W.D. Tex. 2011) (same); *Lentz v. Morgan Drexen, Inc. (In re Fairley)*, Nos. 13-52526-KMS, 14-05006-KMS, 2015 Bankr. LEXIS

11

2870, at *24 (Bankr. S.D. Miss. 2015) (same); *In re Hechinger Inv. Co.*, 285 B.R. at 606 (stating that the court may order an attorney "who holds recorded information relating to the debtor's property or financial affairs, to turn over or disclose that material to the [debtor]" ); *see also Grant, Konvalinka & Harrison, PC v. Banks (In re McKenzie)*, 716 F.3d 404, 419 (6th Cir. 2013) (citing *In re Am. Metrocomm Corp.*, 274 B.R. at 652); *In re Touch Am. Holdings, Inc.*, Civ. No. 09-084 (SLR), 2009 WL 453107, at *2 (D. Del. 2009) (affirming Bankruptcy Court order requiring law firm to turn over documents relating to the debtor's property and financial affairs)). Accordingly, the Former Manager should be immediately ordered to turn over the Documents to the Debtors.

28. As the Supreme Court has observed, section 542(e) of the Bankruptcy Code "was not intended to limit the [debtor's] ability to obtain corporate information." *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343 at 351; *see also Citibank, N.A. v. Andros*, 666 F.2d 1192, 1195 (8th Cir. 1981) ("The legislative history to section 542(e) indicates that Congress enacted that provision to prevent attorneys and accountants from exercising the leverage of withholding documents and claiming liens under state law to obtain priority in payment of their claims over other creditors.") (*citing* S. Rep. No. 95-989, 95th Cong., 2d Sess. 84 (1978), U.S. Code Cong. & Admin. News 1978, p. 5787). Further, the Supreme Court has also observed, in addressing the "subject to any applicable privilege" provision of section 542(e) of the Bankruptcy Code as it relates to displaced managers and former directors and officers, that "[d]isplaced managers may not assert the [corporation's attorney-client] privilege over the wishes of current managers, even as to statements" and communications made by former officers and directors. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343 at 349.

29. In light of the foregoing, section 542(e) of the Bankruptcy Code unambiguously provides for the turnover of the Debtors' Documents. Any refusal on behalf of the Former

Manager to provide the Debtors with their Documents is in contravention with section 542(e) of the Bankruptcy Code and is harmful to the Debtors and their estate because such refusal would impede the Debtors' ability to orderly prosecute these Chapter 11 Cases.

### **NOTICE**

30.     Notice of this Motion will be given to: (a) the Office of the United States Trustee for the Southern District of Texas; (b) counsel to HGC Midstream INV LLC; (c) the United States Attorney's Office for the Southern District of Texas; (d) the Internal Revenue Service; (e) the state attorneys general for states in which the Debtors conduct business; (f) the parties identified on the master service list; and (g) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, under the circumstances, no other or further notice is required.

*[Remainder of Page Left Blank Intentionally]*

The Debtors respectfully request entry of the Order, substantially in the form attached hereto, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: May 4, 2020

Respectfully submitted,

**HUNTON ANDREWS KURTH LLP**

/s/  *Timothy A. ("Tad") Davidson II*
Timothy A. ("Tad") Davidson II (TX Bar No. 24012503)
Joseph P. Rovira (TX Bar No. 24066008)
Ashley L. Harper (TX Bar No. 24065272)
Catherine A. Diktaban (TX Bar No. 24109810)
600 Travis Street, Suite 4200
Houston, Texas  77002
Tel:    (713) 220-4200
Fax:   (713) 220-4285
Email: taddavidson@huntonak.com
            josephrovira@huntonak.com
            ashleyharper@huntonak.com
            cdiktaban@huntonak.com

*Proposed Counsel for the Debtors and Debtors in Possession*

**Certificate of Service**

    I certify that on May 4, 2020, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                                     */s/  Timothy A. ("Tad") Davidson II*
                                                     Timothy A. ("Tad") Davidson II