# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| PERMICO MIDSTREAM PARTNERS | § | Case No. 20-32437 (MI) |
| HOLDINGS, LLC, *et al.*, | § | |
| | § | (Jointly Administered) |
| Debtors.[1] | § | |

## EMERGENCY MOTION OF WILLIAM R. GREENDYKE, CHAPTER 11 TRUSTEE, FOR ENTRY OF AN ORDER AUTHORIZING, BUT NOT DIRECTING, THE TRUSTEE TO ENTER INTO CERTAIN LETTERS OF INTENT

**EMERGENCY RELIEF HAS BEEN REQUESTED. A HEARING WILL BE CONDUCTED ON THIS MATTER ON SEPTEMBER 21, 2020 AT 9:00 A.M. (CENTRAL TIME) IN COURTROOM 404, 4TH FLOOR, 515 RUSK STREET, HOUSTON, TEXAS 77002. IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST EITHER APPEAR AT THE HEARING OR FILE A WRITTEN RESPONSE PRIOR TO THE HEARING. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

**RELIEF IS REQUESTED NOT LATER THAN SEPTEMBER 21, 2020.**

**PLEASE NOTE THAT ON MARCH 24, 2020, THROUGH THE ENTRY OF GENERAL ORDER 2020-10, THE COURT INVOKED THE PROTOCOL FOR EMERGENCY PUBLIC HEALTH OR SAFETY CONDITIONS.**

**IT IS ANTICIPATED THAT ALL PERSONS WILL APPEAR TELEPHONICALLY AND ALSO MAY APPEAR VIA VIDEO AT THIS HEARING.**

**AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT (832) 917-1510. YOU WILL BE RESPONSIBLE FOR YOUR OWN LONG-DISTANCE CHARGES. ONCE CONNECTED, YOU WILL BE ASKED TO ENTER THE CONFERENCE ROOM NUMBER. JUDGE ISGUR'S CONFERENCE ROOM NUMBER IS 954554.**

**YOU MAY VIEW VIDEO VIA GOTOMEETING. TO USE GOTOMEETING, THE COURT RECOMMENDS THAT YOU DOWNLOAD THE FREE GOTOMEETING APPLICATION. TO CONNECT, YOU SHOULD ENTER THE MEETING CODE "JUDGEISGUR" IN THE GOTOMEETING APP OR CLICK THE LINK ON JUDGE ISGUR'S HOME PAGE ON THE SOUTHERN DISTRICT OF TEXAS WEBSITE. ONCE CONNECTED, CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.**

---

[1] The Debtors in these chapter 11 cases and the last four digits of their federal tax identification numbers are as follows: Permico Midstream Partners Holdings, LLC (6374) and Permico Midstream Partners LLC (7902). The location of the Debtors' corporate headquarters and service address is 9301 Southwest Freeway, Suite 308, Houston, TX 77074.

**HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF THE HEARING. TO MAKE YOUR ELECTRONIC APPEARANCE, GO TO THE SOUTHERN DISTRICT OF TEXAS WEBSITE AND SELECT "BANKRUPTCY COURT" FROM THE TOP MENU. SELECT "JUDGES' PROCEDURES & SCHEDULES," THEN "VIEW HOME PAGE" FOR JUDGE ISGUR. UNDER "ELECTRONIC APPEARANCE" SELECT "CLICK HERE TO SUBMIT ELECTRONIC APPEARANCE". SELECT "PERMICO MIDSTREAM PARTNERS HOLDINGS, LLC", COMPLETE THE REQUIRED FIELDS AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

William R. Greendyke, the Court-appointed chapter 11 trustee (the "Trustee") for Permico Midstream Partners Holdings, LLC and Permico Midstream Partners (collectively, the "Debtors"), hereby files this *Emergency Motion of William R. Greendyke, Chapter 11 Trustee, for Entry of an Order Authorizing, But Not Directing, the Trustee to Enter Into Certain Letters of Intent* (the "Motion"). In support of this Motion, the Trustee respectfully states as follows:

## Preliminary Statement

1. By this Motion, and pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code"), the Trustee requests entry of an order, substantially in the form attached hereto (the "Proposed Order"), authorizing the Trustee to enter into certain letters of intent with prospective shipper counterparties in the ordinary course of business.

2. The Debtors are Houston-based midstream energy companies. The Debtors desire to build a Natural Gas Liquids pipeline between the Permian Basin and Robstown, Texas, having initial capacity of 400,000 barrel per day, a 330,000 barrel per day fractionator to be located near Robstown, Texas, a 130,000 barrel per day LPG Terminal and dock facilities to be located along the Corpus Christi, along with other various pipelines and storage facilities (the "Pipeline Project").

3. To date, the Trustee has received two letters of intent (collectively, and together with any future letters of intent, the "LOIs") from ███████████████████ expressing their

2

mutual intent to enter into a transaction under which the Debtors would provide to such counterparty NGL transportation and fractionation services, terminaling services, and transportation services pursuant to mutually agreed upon definitive agreements. The LOIs additionally provide that the Debtors will purchase ▮▮▮▮▮▮▮▮ products from the counterparties.

4. The Trustee submits that, upon information and belief, the entry into such LOIs is a common practice for companies in the midstream industry, particularly one at this stage of the development process. Therefore, the Trustee believes that entry into the LOIs and related transactions constitute ordinary course transactions under section 363(c) of the Bankruptcy Code. Nevertheless, the Trustee, out of an abundance of caution and out of respect and deference to this Court, files this Motion seeking authorization, but not direction, to enter into the LOIs pursuant to sections 105(a) and 363(b) of the Bankruptcy Code.

5. For reasons set forth herein, the Trustee respectfully requests that this Court enter the proposed Order attached hereto, authorizing, but not directing, the Trustee to enter into the LOIs.

**Emergency Consideration**

6. Entering into the LOIs is critical in progressing these cases. The Trustee, in consultation with his advisors and after discussions with various of the constituents and largest creditors in these cases, has determined that, in order to advance the Pipeline Project and exit chapter 11 promptly, the Trustee must obtain commitments from counterparties to purchase certain committed barrels per day of NGLs at the Debtors' to be constructed plant, particularly in what is a very competitive and challenging energy market. These commitments make the development project more attractive, and ultimately bankable. Thus, these LOIs are but one step (albeit an

important one) in advancing this project towards financial close.  Upon authorization by this Court, the Trustee will then focus his efforts on advancing these LOIs to definitive documentation, while simultaneously exploring financing and potential investment opportunities and alternatives.

7. Additionally, it is important that the Trustee be granted immediate authority to enter into these LOIs in light of the dispute over control over these Debtors which precipitated these chapter 11 cases.  Indeed, absent a signed LOI from the Trustee, certain counterparties may simply be unwilling to continue negotiations and to otherwise invest time and effort towards definitive documentation, if they don't have certainty as to who the ultimate decision-maker is on behalf of the estates given their unfamiliarity with the U.S. bankruptcy process.  Thus, entry of a comfort order will reassure the Debtors' counterparties that entering into such LOIs and that proceeding to negotiate with the Trustee is permissible under applicable law and authorized by the Court.

8. Thus, immediate relief is required to maximize the Debtors' chance of successful and prompt reorganization.  For this reason, the Trustee respectfully requests entry of the proposed Order attached hereto.

## Jurisdiction, Venue, and Authority

9. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

10. This Court has constitutional authority to enter final orders with respect to the relief requested herein.  The Trustee further confirms his consent to this Court's entry of final orders or judgments on this Motion if it is later determined that, in the absence of the consent of the parties, this Court does not have constitutional authority to enter final orders or judgments.

11. The statutory bases for relief requested herein are sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 6004 and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

**Background**

12. The Debtors are Houston-based limited liability companies that are engaged in certain midstream oil and gas operations. On May 4, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas.

13. On May 18, 2020, the Office of the United States Trustee (the "U.S. Trustee") filed a *Notice of Appointment of Chapter 11 Trustee* and corresponding *Application for Order Approving Appointment of Chapter 11 Trustee*, seeking approval of Mr. Greendyke to serve as the Trustee in these cases. *See* Dkt. Nos. 36 &37.

14. On May 22, 2020, the Court entered its *Order Approving Appointment of Chapter 11 Trustee in the Jointly Administered Permico Midstream Partners Holdings, LLC Cases* (the "Trustee Order"), approving appointment of Mr. Greendyke as Trustee. *See* Dkt. No. 44.

15. Prior to the Petition Date, the Debtors were in the process of developing the Pipeline Project to build (i) pipelines from Permian Basin and Eagle Ford shale regions to Corpus Christi; (ii) two fractionator trains; (iii) an NGL salt cavern storage facility; and (iv) one or more export terminals with spurs to the gas liquids storage and trading hub in Mont Belvieu, Texas. Upon completing the Project, the Debtors will offer to customers, among others, the following services: (i) NGL transportation and fraction services; (ii) ▇▇▇ terminaling services; and (iii) ▇▇▇ transportation services.

**Summary of the Key Terms of the LOIs**

16. As stated above, the Trustee has received certain letters of intent from ▮ ▮ expressing their mutual intent to enter into a transaction under which the Debtors would provide to such counterparty NGL transportation and fractionation services, terminaling services, and transportation services pursuant to mutually agreed upon definitive agreements. Also, the Debtors will ultimately purchase ▮ products from such counterparties.

A. **The ▮ Letter of Intent.**

17. The specific terms of the LOI between the Trustee, the Debtors, and ▮ have been memorized in the term sheet, which is attached hereto as **Exhibit A**, and is summarized in the chart below:[2]

| Term Sheet Provision | Summary |
|---|---|
| **Parties** | The Trustee, Permico Midstream Holdings, LLC and ▮ |
| **Term** | ▮, having the option to extend for ▮ periods with notice ▮ prior to the expiry date, subject to certain conditions to be set forth in the Transportation Services Agreement. Any extension of this agreement also applies to the Associated Agreements |
| **Transactions** | ▮ desires to purchase ▮ barrels per day of NGLs at the tailgate of Permian Basin processing plants and contract for services with the Permico Project facilities. Permico would provide to ▮ NGL Transportation and Fractionation services, ▮ Terminaling Services, and ▮ Transportation Services, and Permico will purchase ▮ Purity Products from ▮ Additionally, ▮ would have the option to purchase up to ▮ of the Equity in Permico at par value if the Definitive Agreements are executed, all conditions precedent thereunder are satisfied or waived, and the Parties negotiate mutually agreeable terms upon which such option can be exercised. |

---

[2] The summary is provided for the convenience of the Court and parties in interest. For the avoidance of the doubt, to the extent there is any conflict between this summary and the terms of the LOI, the terms of LOI shall govern in all respects.

| | |
|---|---|
| **Conditions** | The transaction is condition upon the following:<br>(i) obtaining funding for the Project,<br>(ii) completing Project construction,<br>(iii) commissioning the Project facilities, and<br>(iv) obtaining all required regulatory, internal, bankruptcy court, and other approvals by Permico. |
| **Governing Law** | The laws of the State of Texas. |
| **Agreements** | Transportation Services Agreement, Fractionation Services Agreements, ▮▮▮▮ Products Sales Agreement, ▮▮▮▮ Firm Transportation Agreement, ▮▮▮▮ Terminal Tolling Agreement, Master Netting Agreement |
| **Start Date** | Commercial Operations Date for the Pipeline, the Fractionator and the LPG Terminal, which is anticipated in ▮▮▮▮ |
| **Transportation Services Agreement** | **Shipper**: Shipper or its wholly owned affiliate<br>**Carrier**: PMP West Texas Pipeline LLC<br>**Product**: Y-Grade meeting the product specifications contained in the Pipeline Tariff<br>**Pipeline**: PMP West Texas Pipeline LLC<br>**Rate Type**: Anchor Shipper Committed Transportation Rate<br>**Contract Volume**: ▮▮▮▮ barrels per day |
| **Fractionation Services Agreements** | **Subscriber**: Subscriber or its wholly owned affiliate<br>**Provider**: PMP Robstown Fractionator LLC<br>**Pipeline**: PMP West Texas Pipeline LLC<br>**Base Charge**: ▮▮▮▮ in year 1, as adjusted for recovery by PMP of any future "new environmental fee or tax" imposed by a national or local Governmental Authority, escalated using the Price Escalator thereafter<br>**Contract Volume**: ▮▮▮▮ barrels per day |
| ▮▮▮▮ **Products Sale Agreements** | **Seller**: Seller or its wholly owned affiliate<br>**Buyer**: PMP NGL Marketing LLC<br>**Pipeline**: PMP West Texas Pipeline LLC<br>**Products**: ▮▮▮▮<br>**Price Formula**: Price for each component shall be: Base Price less ▮▮▮▮ |
| ▮▮▮▮ **Firm Transportation Agreement** | **Shipper**: Shipper or its wholly owned affiliate<br>**Carrier**: PMP Purity Product Pipeline LLC<br>**Pipeline**: PMP West Texas Pipeline LLC<br>**Product**: ▮▮▮▮<br>**Contract Volume**: ▮▮▮▮ |
| ▮▮▮▮ **Terminal Tolling Agreement** | **Toller**: Toller or its wholly owned affiliate<br>**Facility Owner**: PMP LPG Terminal LLC<br>**Pipeline**: PMP West Texas Pipeline<br>**Product**: ▮▮▮▮<br>**Contract Volume**: ▮▮▮▮ |

| Equity General Terms |  |
|---|---|
|  |  |

**B. The ▮▮▮▮ Letter of Intent.**

18. The specific terms of the LOI between the Trustee, the Debtors, and ▮▮▮▮ have been memorized in the term sheet, which is attached hereto as **Exhibit B**, and is summarized in the chart below:[3]

| Term Sheet Provision | Summary |
|---|---|
| **Parties** | The Trustee, Permico Midstream Holdings, LLC and ▮▮▮▮ |
| **Term** | ▮ years, with ▮ having the option to extend for ▮ periods with notice ▮ prior to the expiry date, subject to certain conditions to be set forth in the Transportation Services Agreement. Any extension of this agreement also applies to the Associated Agreements |
| **Transactions** | ▮ desires to purchase ▮ barrels per day of NGLs at the tailgate of Permian Basin processing plants and contract for services with the Permico Project facilities. Permico would provide to ▮ NGL Transportation and Fractionation services, Terminaling Services, and ▮ Transportation Services, and Permico will purchase ▮ Purity Products from ▮ Additionally, ▮ would have the option to purchase up to ▮ of the Equity in Permico at par value if the Definitive Agreements are executed, all conditions precedent thereunder are satisfied and waived, and the Parties negotiate mutually agreeable terms upon which such option can be exercised. |
| **Conditions** | The transaction is condition upon the following: |

---

[3] The summary is provided for the convenience of the Court and parties in interest. For the avoidance of the doubt, to the extent there is any conflict between this summary and the terms of the LOI, the terms of LOI shall govern in all respects.

| | |
|---|---|
| | (i) obtaining funding for the Project,<br>(ii) completing Project construction,<br>(iii) commissioning the Project Facilities, and<br>(iv) obtaining all required regulatory, internal, bankruptcy court, and other approvals by Permico. |
| **Governing Law** | The laws of the State of Texas. |
| **Agreements** | Transportation Services Agreement, Fractionation Services Agreements, ▅▅▅ Products Sales Agreement, ▅▅▅ Firm Transportation Agreement, ▅▅▅ Terminal Tolling Agreement, Master Netting Agreement |
| **Start Date** | Commercial Operations Date for the Pipeline, the Fractionator and the LPG Terminal, which is anticipated in ▅▅▅ |
| **Transportation Services Agreement** | **Shipper**: ▅▅▅ or its wholly owned affiliate<br>**Carrier**: PMP West Texas Pipeline LLC<br>**Product**: Y-Grade meeting the product specifications contained in the Pipeline Tariff<br>**Pipeline**: PMP West Texas Pipeline LLC<br>**Rate**: Type: Anchor Shipper Committed Transportation Rate<br>**Contract Volume**: ▅▅▅ barrels per day |
| **Fractionation Services Agreements** | **Subscriber**: ▅▅▅ or its wholly owned affiliate<br>**Provider**: PMP Robstown Fractionator LLC<br>**Pipeline**: PMP West Texas Pipeline LLC<br>**Base Charge**: ▅▅▅ in year 1, as adjusted for recovery by PMP of any future "new environmental fee or tax" imposed by a national or local Governmental Authority, escalated using the Price Escalator thereafter<br>**Contract Volume**: ▅▅▅ barrels per day |
| ▅▅▅ **Products Sale Agreements** | **Seller**: ▅▅▅ or its wholly owned affiliate<br>**Buyer**: PMP NGL Marketing LLC<br>**Pipeline**: PMP West Texas Pipeline LLC<br>**Products**: ▅▅▅<br>**Price Formula**: Price for each component shall be: Base Price less ▅▅▅ |
| ▅▅▅ **Firm Transportation Agreement** | **Shipper**: ▅▅▅ or its wholly owned affiliate<br>**Carrier**: PMP Purity Product Pipeline<br>**Pipeline**: PMP West Texas Pipeline<br>**Product**: ▅▅▅<br>**Contract Volume**: ▅▅▅ barrels per day |
| ▅▅▅ **Terminal Tolling Agreement** | **Toller**: ▅▅▅ or its wholly owned affiliate<br>**Facility Owner**: PMP LPG Terminal<br>**Pipeline**: PMP West Texas Pipeline<br>**Product**: ▅▅▅<br>**Contract Volume**: ▅▅▅ barrels per day |

**Basis for Relief Requested**

**A.     Entry into the LOIs is an Ordinary Course Transaction.**

19.     Section 363(c) of the Bankruptcy Code provides that a debtor in possession "may enter into transactions . . . in the ordinary course of business, without notice or a hearing." 11 U.S.C.§ 363(c)(1).  The ordinary course of business standard embodied in this provision is intended to provide the trustee with the flexibility to engage in the ordinary course transactions required to operate the debtors' business without undue supervision by the debtors' creditors or the court.  *See, e.g., In re HLC Props., Inc.*, 55 B.R. 685, 686 (Bankr. N.D. Tex. 1985); *Moore v. Brewer (In re HMH Motor Servs., Inc.),* 259 B.R. 440, 448-49 (Bankr. S.D. Ga. 2000).

20.     The Bankruptcy Code does not define "ordinary course of business" standard.  However, "[c]ourts that have considered the meaning of the phrase have offered at least two approaches to ascertain whether a particular postpetition transaction is in the 'ordinary course of business.'"  *In re Cowin*, No. 13-30984, 2014 WL 1168714, at *40 (Bankr. S.D. Tex. Mar. 21, 2014).

21.     The two tests applied are the "horizontal" or "comparable businesses" test and "vertical" or "creditor expectation" test.  The horizontal inquiry asks objectively whether the transaction is typical to the debtor's industry, and considers whether similar businesses would engage in the proposed transaction as ordinary business.  *Id.* at *41-44.  The vertical inquiry subjectively compares the transaction at issue to the debtor's prepetition practices and views the proposed transaction from a creditors' vantage point.  *See id.; In re Patriot Place*, *Ltd.,* 486 B.R. 773, 793 (Bankr. W.D. Tex. 2013).

22.     The Trustee's proposed entry into the LOIs and underlying transactions here meets both tests.  First, under the horizontal test, the LOIs are typical agreements among companies in

the Debtors' industry, and the Debtors were in the process of negotiating certain of these LOIs pre-petition.  Moreover, providing services such as NGL transportation and fractionation services, ▮▮▮ terminaling, and ▮▮▮ transportation is in the ordinary course of the Debtors' business and just as it is with other midstream services companies.

23.     Second, under the vertical test, as highlighted above, the entry into the LOIs is entirely consistent with and a mere continuation of the efforts the Debtors began prior to the commencement of these cases.  Further, a typical creditor of these estates would not expect notice and an opportunity to object to the Trustee's entry into the LOIs because, generally, the nature of the Debtors' business involves entry into such agreements involving the provision of similar services.  Indeed, the Trustee anticipates entering into additional LOIs in the near future.  In other words, the LOI transactions represent a core of the Debtors' business and are critical part of the Debtors' planned go-forward operations.  Importantly, these transactions will generate virtually all of the Debtors' revenue post-emergence.

24.     Accordingly, the Trustee requests that the Court authorize, but not direct, the Trustee to enter into the LOIs as an ordinary course of business transaction under section 363(c)(1) of the Bankruptcy Code.

**B.     Alternatively, Sufficient Business Justification Exists To Authorize The Trustee To Enter Into And Perform Under The LOIs.**

25.     While the Trustee believes that the LOI transactions are within the ordinary course of business and can be entered into and performed without notice and a hearing, the Trustee, out of an abundance of caution and out of respect and deference to this Court, seeks authorization to enter into LOIs under sections 105(a) and 363(b) of the Bankruptcy Code.

26.     Section 105 of the Bankruptcy Code provides this Court with the power to grant the relief requested herein.  It states that a bankruptcy court "may issue any order, process, or

judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

27. Section 363(b) permits a trustee, after a notice and a hearing, to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). The Trustee's decision to use, sell, or lease assets outside the ordinary course of business must be based upon sound business justification. *See, e.g., ASARCO, Inc. v. Elliot Mgmt. (In re ASARCO, LLC)*, 650 F.3d 593, 601("[T]here must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.") (quoting *Institutional Creditors of Cont'l Air Lines, Inc. (In re Cont'l Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986)).

28. Courts emphasize that the business judgement rule is not an onerous standard and may be satisfied "as long as the proposed action appears to enhance the debtor's estate." *Crystalin, LLC v. Selma Props. Inc. (In re Crystalin, LLC)*, 293 B.R. 455, 463-64 (B.A.P. 8th Cir. 2003) (quoting *Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 566 n.16 (8th 1997); *see also In re AbitibiBowater*, 418 B.R. 815, 831 (Bankr. D. Del. 2009) (stating that the business standard is "not a difficult standard to satisfy").

29. The Trustee believes that entering into the LOIs will yield a significant benefit to the Debtors' estates because such is critical to progressing these cases and to ultimately advancing the project as these commitments make the development project more attractive, and ultimately bankable. Additionally, authorizing the Trustee to enter into these LOIs will provide comfort and clarity to the Debtors' various counter-parties as to the Trustee's ultimate decision-making authority and control, and it will reassure the Debtors' counterparties that entering into such LOIs and that proceeding to negotiate with the Trustee is permissible under applicable law and authorized by the Court.

30. Further, the Trustee anticipates that he will be entering into similar transactions with other parties. Such authority will eliminate the need to prepare and prosecute motions and obtain express court approval of every transaction. In addition, the relief requested will protect the Trustee against the risk of losing business opportunities, save the Trustee significant administrative costs, and reduce professionals' fees.

31. Accordingly, the Trustee's decision to enter into the LOIs is a sound exercise of his business judgment and is in the best interest of the Debtors, their estates, their creditors, and all parties in interest.

## Request For Waiver of Bankruptcy Rule 6004

32. To implement the foregoing successfully, the Trustee requests that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Trustee has established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

**WHEREFORE**, the Trustee respectfully requests that the Court enter the proposed Order substantially in the form attached hereto, granting the relief requested herein and granting such other and further relief as is just and proper.

Dated: September 11, 2020
Houston, Texas

Respectfully submitted,

**NORTON ROSE FULBRIGHT US LLP**

*/s/ Jason L. Boland*
Jason L. Boland (SBT 24040542)
Bob B. Bruner (SBT 24062637)
Julie Goodrich Harrison (SBT 24092434)
1301 McKinney Street, Suite 5100
Houston, Texas 77010
Telephone: (713) 651-5151
Facsimile: (713) 651-5246
Email: jason.boland@nortonrosefulbright.com
Email: bob.bruner@nortonrosefulbright.com
Email: julie.harrison@nortonrosefulbright.com

*Counsel to William R. Greendyke,*
*Chapter 11 Trustee*

## CERTIFICATE OF ACCURACY

I hereby certify that the facts and circumstances described in the above pleading giving rise to the emergency request for relief are true and correct to the best of my knowledge, information, and belief.

*/s/ Jason L. Boland*
Jason L. Boland

## CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2020, a true and correct copy of the foregoing Motion was served by CM/ECF system for the United State Bankruptcy Court for the Southern District of Texas.

*/s/ Julie Harrison*
Julie Harrison