**SUBJECT TO LENDER'S REVIEW AND APPROVAL**

## PROMISSORY NOTE

$750,000.00                                                     December ___, 2020

FOR VALUE RECEIVED after date, without grace, in the manner, on the dates, and in the amounts so stipulated, the undersigned**,** William R. Greendyke, in his capacity as Chapter 11 Trustee of Permico Midstream Partners Holdings, LLC, a Texas limited Liability company in the Bankruptcy Case ("PMH") and William R. Greendyke, in his capacity as Chapter 11 Trustee of Permico Midstream Partners LLC in the Bankruptcy Case ("PMP" and, together with PMH, each a "Borrower" and hereinafter collectively called "Borrowers"), jointly and severally promise to pay to the order of Integra Midstream Partners, LLC, a Delaware limited liability company, (the "Lender") at the Lender's office at c/o Corpac Steel Products Corp., Attn: Jorge P. Woldenberg, 20803 Biscayne Blvd., Suite 502, Aventura, Florida 33180 on the Maturity Date the sum of Seven Hundred Fifty Thousand and no/100 Dollars ($750,000.000) or so much thereof as may be advanced by Lender to Borrowers, in lawful money of the United States of America which shall be legal tender for the payment of all debts or dues, public or private at the time of payment, and pay, in like money, interest on the principal from date advanced until maturity at the rate of twelve and one-half percent (12.50%) per annum.

Borrowers further promise to pay Lender, in like money, interest on all past due principal from maturity until paid at eighteen per cent (18.0%) per annum.

Borrowers may prepay this Promissory Note (the "Note") in whole or in part from time to time without premium or penalty.

All capitalized terms not defined herein shall have the meanings provided in the Loan Agreement (as defined below). For the purposes of this Note, the following terms and the means set forth next to them:

"Bankruptcy Case" means the jointly administered cases of Permico Midstream Holdings, LLC, a Texas limited liability company and Permico Midstream Holdings, LLC, a Texas limited liability company, under Case No. 20-32437 pending in the Bankruptcy Court.

"Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

"Bankruptcy Code" means Title 11 of the United States Code.

"Interim Order" means an order of the Bankruptcy Court authorizing, on an interim basis pursuant to Section 364 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001(c), the extension of credit to the Borrowers by the Lender as evidenced by this Note and the Loan.

Notwithstanding anything contained herein to the contrary, all principal and accrued unpaid interest is due and payable by Borrowers, jointly and severally, on or before the earliest of the following to occur (the "Maturity Date"): (1) 180 days from the date of entry on the Court's case management system of the Interim Order in the Bankruptcy Case; (2) the first date on which the Bankruptcy Court enters an order in the Bankruptcy Case converting the Bankruptcy Case to one under Chapter 7 of Bankruptcy Code for either Borrower; (3) the date on which an order is entered by the Bankruptcy Court in the Bankruptcy Cases confirming for either Borrower either (i) a plan of reorganization or (ii) liquidation of substantially all of the assets of either Borrower; (4) the date on which an order is entered by the Bankruptcy Court in Bankruptcy Case approving a sale of all or substantially all of the material assets of either or both Borrowers under Section 363 of Title 11 of the United States Code; or (5) the occurrence of a Default under any of the following: (a) this Note, (b) the Deed of Trust of even date herewith from William R. Greendyke, in his capacity as Chapter 11 Trustee of Permico Midstream Partners, LLC, a Texas limited Liability company to Trent L. Rosenthal, Trustee for the benefit of Lender, or (c) the Loan Agreement of even date herewith between Lender and Borrowers (the "Loan Agreement").

THIS LOAN IS PAYABLE IN FULL ON THE MATURITY DATE. ON THE MATURITY DATE, BORROWERS MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME.

It is agreed that time is of the essence in the performance of all obligations set forth in this Note. If (a) Borrowers fail to make payment of any part of the principal or interest of this Note as same shall become due and payable, or (b) if Borrowers fail to perform any of the other terms, covenants, conditions, agreements, or provisions set forth in this Note or any agreements securing payment hereof or in any of the obligations set forth in the Loan Agreement of even date herewith by and between Borrowers and Lender, and in the case of this clause (b), such default continues for thirty (30) days following Borrowers' receipt of written notice thereof ((a) or (b), a "Default"), then in any such event the Lender may declare the balance due and payable without further notice, whereupon the entire unpaid principal balance of this Note and all interest accrued thereon shall thereupon at once mature and become due and payable. Lender shall provide notice of any Default in writing via email to william.greendyke@nortonrosefulbright.com, jason.boland@nortonrosefulbright.com, and bob.bruner@nortonrosefulbright.com, and such notice shall also be delivered to Borrowers by next business day overnight courier service (e.g., FedEx, UPS) and sent by electronic mail to the addresses of the Borrowers specified in the signature block below.

This Note shall be the joint and several obligations of Borrowers, and shall be binding upon Borrowers, their successors and assigns. This Note and the rights hereunder may be enforced by the Lender and its successors and assigns.

In the event of a Default hereunder, or in any of the instruments securing payment hereof, and this Note is placed in the hands of an attorney for collection (whether or not suit is filed) or if this Note is collected by suit or legal proceedings through the Bankruptcy Court or

bankruptcy proceedings, Lender shall be entitled to recover reasonable attorney's fees and court costs.

All payments shall be made to Lender by wire transfer through the Fedwire Funds Service.

Borrowers agree that Lender's failure to exercise any option or election herein upon the occurrence of any Default shall not be construed as a waiver of the right to exercise such option, or election at any later date or upon the occurrence of a subsequent Default. Lender may accept partial payments on the Note, either the monthly installments or after maturity, whether by the terms of this Note or upon acceleration, without waiver of the right to demand the remainder of the required payment and without waiver of the right to continue to assert any remedy or enforce the sale provisions of the Deed of Trust.

Borrowers and any endorser, guarantor, or surety of this note waive notice, demand for payment, presentment for acceleration of maturity, presentment for payment, notice of dishonor, diligence in collection, or notice of protests, and consent to all renewals and extensions in the time for payment of this Note.

It is the intention of the parties hereto to comply with the usury laws of the State of Texas. Accordingly, in no event shall this Note or such documents be construed to contract for, charge, or permit a receipt of interest in excess of the maximum amount permitted by the laws of the State of Texas and/or of the United States of America. Except as set forth in the paragraph hereinabove regarding prepayment of this Note, if any such excess of interest is contracted for, charged, or received under this Note or under any other loan document, or in the event this Note is accelerated in whole or in part, or if all or part of the principal or interest of this Note shall be prepaid, so that the amount of interest contracted for, charged, or received under this Note or other loan documents on the principal actually outstanding from time to time under this Note shall exceed the maximum rate of interest permitted by law; then, in such event (a) the provisions of this paragraph shall govern and control; and (b) neither Borrowers hereof nor Borrowers' respective successors or assigns, or any other party liable for the payment hereof shall be obligated to pay the amount of such interest to the extent that it is in excess of the maximum permitted by law; and (c) any such excess shall be deemed a mistake and canceled automatically, and, if theretofore paid, shall, at the option of the Lender, its successors and assigns, be refunded to Borrower or applied as a credit against the then unpaid principal amount hereof; and (d) the effective rate of interest shall be automatically reduced to the maximum rate of interest permitted by law. The "weekly ceiling" defined in Chapter 303 of the Texas Finance Code is the applicable maximum rate of interest permitted by law; provided that, if any applicable law permits greater interest, the law permitting the greatest interest shall apply. Determination of the rate of interest shall be made by amortizing, prorating, allocating, and spreading in equal parts during the period of the fully stated term of the loan evidenced hereby all interest at any time contracted for, charged, or received from Borrower in connection with this loan.

This Note shall be governed by the law of the State of Texas.

3

The indebtedness evidenced by this Note is incurred by Borrowers primarily for business and commercial purposes.

Payment of this Note is secured by a Deed of Trust of even date herewith executed by the William R. Greendyke in his capacity as Chapter 11 Trustee on behalf of Permico Midstream Partners, LLC, for the benefit of Lender covering the property particularly described therein.

Borrowers:

**Permico Midstream Partners Holdings, LLC, Debtor,**
**a Texas limited liability company Chapter 11 Debtor**


By:_____

William R. Greendyke, Chapter 11 Trustee, Bankruptcy Case No. 20-32437, pending in the United States Bankruptcy Court for the Southern District of Texas, Houston Division Address:
1301 McKinney Street
Suite 5100
Houston, Texas 77074

**Permico Midstream Partners, LLC, a Texas limited liability company, as Debtor**

By:_____
William R. Greendyke, Chapter 11 Trustee, Bankruptcy Case No. 20-32437, pending in the United States Bankruptcy Court for the Southern District of Texas, Houston Division Address:
1301 McKinney Street
Suite 5100
Houston, Texas 77074

**SUBJECT TO LENDER'S REVIEW AND APPROVAL**

## Deed of Trust and Security Agreement

| | |
|---|---|
| State of Texas | § |
| | § |
| Counties of Duval, | § |
| Jim Wells, LaSalle, | § |
| McMullen, Nueces, Refugio, | § |
| and San Patricio | § |

KNOW ALL PERSONS BY THESE PRESENTS:

THAT **Permico Midstream Partners, LLC, a Texas limited liability company,** herein called "Grantor," in consideration of the debt hereinafter described, and for the further consideration, uses, purposes and trusts, hereinafter set forth, has GRANTED, SOLD and CONVEYED and by these presents does GRANT, SELL and CONVEY unto **Trent L. Rosenthal, Trustee of Harris County, Texas**, and his substitutes or successors, all right, title and interest of Grantor in and to the following described property:

(a) the real estate situated in Nueces County, Texas, which is more particularly described on **Exhibit 1** attached hereto, together with all buildings and improvements now or hereafter situated thereon (the "Fee Real Property");

(b) the pipeline facilities and appurtenances and contract rights located in the Texas Counties of Chambers, Duval, Harris, Jim Wells, LaSalle, Matagorda, McMullen, Nueces, Refugio, San Patricio, and Ward more particularly described in **Exhibit 2** attached hereto (all of the foregoing set forth in Paragraphs (a) above and this Paragraph (b) being hereinafter sometimes called the "Premises");

(c) all of the following property, items and interests to the extent same are assignable:

(i) any and all plans and specifications for the rehabilitation, reconstruction or repair of the Premises;

(ii) any and all contracts and subcontracts relating to the Premises;

(iii) any and all permits, licenses, franchises, certificates and other rights and privileges obtained in connection with the Premises;

(iv) any and all present and future equipment, fixtures, and articles of personal property now or hereafter located on the Premises or attached to or used in and about or related to the planning, development, financing or operation of the Premises, including, but not limited to, the types of equipment, fixtures, and articles of personal property more particularly described as follows: Machines, engines, boilers, dynamos, elevators, stokers, tanks, awnings, screens, cabinets, shades, blinds, carpets, draperies, furniture, lawn mowers and plumbing, heating, air conditioning, lighting, ventilating, refrigerating, cooking, laundry, and incinerating equipment, and all such fixtures and appurtenances thereto, and such other goods and chattels and personal property as are ever used or furnished in constructing or operating the Premises or the activities conducted therein, and all renewals or replacements thereof, or articles in substitution therefor or additions thereto, including, but not limited to those items of personalty described in **Exhibit 1** and

**Exhibit 2** attached hereto and made a part hereof for all purposes; (v) any and all proceeds arising from or by virtue of the sale, lease, or other disposition of any of the foregoing property and items set forth in (i) through (iv), preceding, or in (a) preceding; (vi) any and all proceeds payable or to be payable under each policy of insurance relating to the Premises; (vii) any and all proceeds arising from the taking of all or a part of the Premises for any public or quasi-public use under any law, or by right of eminent domain, or by private or other purchase in lieu thereof; (viii) any and all leases relating to the property as the same now exists, or is hereinafter constructed; (ix) any and all contracts of sale entered into as to the purchase of the premises or any of the items described herein; and

(d) All other interest of every kind and character which Grantor now has or at any time hereafter acquired in and to the property described or referred to in Paragraphs (a), (b) and (c), preceding, and all property which is used or useful in connection with the Premises, including but not limited to, tradenames, sign inventory and the like, together with all additions to the property described in these Paragraphs (a), (b) (c), and (d) accessions thereto, and replacements thereof.

All property and interests described or referred to in Paragraphs (a), (b), (c), and (d) preceding, are sometimes hereinafter referred to collectively as the "Property".

TO HAVE AND TO HOLD the Property, together with all and singular the rights, hereditaments and appurtenances in any wise appertaining or belonging thereto, unto Trustee, and his successors or substitutes in this trust, and its and their assigns, in trust and for the uses and purposes hereinafter set forth, forever.

Grantor, for Grantor and Grantor's successors, hereby agrees to warrant and forever defend, all and singular, the Property unto Trustee, and his successors or substitutes in this trust, and to his and their assigns, forever, against every person whomsoever lawfully claiming or to claim the same or any part thereof..

Grantor hereby grants to Trustee for the benefit of **Integra Midstream Partners, LLC**, a Delaware limited liability company ("Beneficiary"), and its successors and assigns, a security interest in the Property, and each and every part thereof, and in all proceeds from the sale, lease, or other disposition therefor and in all sums, proceeds funds, and reserves described or referred to herein, provided that the grant of a security interest in proceeds shall not be deemed to authorize any action otherwise prohibited herein.

ARTICLE I.

INDEBTEDNESS

Secured Indebtedness

1.01. This conveyance is made in Trust, however, to secure the payment of a promissory note of even date herewith (the "Note") in the principal sum of Seven Hundred Fifty Thousand and No/100s Dollars ($750,000.00), executed by Grantor and by Permico Midstream Holdings, LLC, a Texas limited liability company ("Permico Holdings") as makers by and through William R. Greendyke solely in his capacity as Chapter 11 Trustee for Permico Holdings and GRANTOR in jointly administered Bankruptcy Case No. 20-34347 pending in the United State Bankruptcy Court for the Southern District of Texas, Houston Division payable to the order of Beneficiary, and being further described as follows:

In the principal sum of Seven Hundred Fifty Thousand and No/100 Dollars ($750,000.00) being due and payable, and bearing interest, as provided therein.

This Deed of Trust and Security Agreement ("Deed of Trust") shall secure, in addition to the said note, all funds hereafter advanced by Beneficiary to or for the benefit of Grantor or Permico Holdings, as contemplated by any covenant or provision herein contained or for any other purposes, and all other indebtedness, of whatever kind or character, owing or which may hereafter become owing by Grantor or Permico Holdings to Beneficiary, whether such indebtedness is evidenced by note, open account, overdraft, endorsement, surety agreement, guaranty, or otherwise, it being contemplated that Grantor and Permico Holdings may hereafter become indebted to Beneficiary in further sum or sums. This Deed of Trust shall also secure all renewals and extensions of any of the indebtedness secured hereby.

## Beneficiary

1.02. The term "Beneficiary" shall mean the designated payee of the Note described in Paragraph 1.01, above, or any subsequent lawful owner or holder of such Note or of any indebtedness secured hereby.

## Payment of Indebtedness

1.03. If Grantor shall do and perform each and all of the covenants and agreements herein contained and make prompt payment of the indebtedness secured hereby as the same shall become due and payable, then this conveyance shall become null and void and of no further force and effect, and this conveyance shall be released at the expense of Grantor.

## ARTICLE II.

## COVENANTS AND AGREEMENTS OF GRANTOR

### Ownership of Property

2.01. Warranty of Title. Grantor represents and warrants to and covenants with Beneficiary that (a) Grantor has good and marketable title to an indefeasible fee simple title in the Fee Real Property, (b) Grantor has good and marketable title to the portions of the Property on **Exhibit 2** hereto and made a part hereof, (c) the Property described in **Exhibit 2** hereto and made a part hereof is free and clear of any liens, encumbrances, easements, assessments, security interests, claims or defects of any kind, nature or description except those easements of record and recorded declarations, restrictions, reservations and covenants, if any, that are set forth in the schedule of exceptions set forth in **Exhibit 3** attached hereto and made a part hereof (the "Permitted Exceptions"), (c) the real property taxes payable by Grantor are not delinquent or in default, (d) Grantor has the right to convey the Property to Trustee for the benefit of Beneficiary, and the right to grant a security interest in the personal property security. Grantor will warrant and defend title to the Property and will defend the validity and priority of the lien of this Deed of Trust and Security Agreement and the security interest granted herein against any claims or demands, by, through or under Grantor, but not otherwise except for the Permitted Exceptions.

2.02 Grantor also represents and warrants to Beneficiary that:

(a) Grantor has authority to execute and deliver this Deed of Trust;

(b) the personal property subject to this Deed of Trust is and will be used as equipment in Grantor's business and not as inventory, or as goods leased or held for lease by Grantor but not held for sale;

(c) with respect to each Grantor who is an individual, no part of the Property constitutes a part of its business or residential homestead; and

(d) Grantor is lawfully seized of the Property.

Payment of Taxes

2.03. Grantor shall pay, or cause to be paid, all lawful taxes and assessments of every character in respect of the Property as the same become due and payable.

Maintenance and Repair

2.04. Grantor shall keep the improvements on the Property in good repair and condition, shall not permit or commit any intentional waste thereon. Grantor shall promptly make all necessary repairs, renewals and replacements. Grantor will discharge all claims for labor performed and material furnished therefor and will not suffer any mechanic's or materialmen's lien(s) therefore to attach to any part of the Property that are not released or bonded over.

Insurance

2.05. Grantor shall insure and keep insured all improvements now or hereafter located on the Fee Real Property against loss or damage by fire and windstorm, and any other hazard or hazards as may be reasonably required from time to time by the Beneficiary during the term of the indebtedness secured hereby, to the extent of the original amount of the indebtedness secured hereby, or to the extent of the full insurable value of the improvements, whichever is greater and in such form and with such insurance company or companies as may be approved by the Beneficiary. Grantor shall deliver to Beneficiary the insurance policy with a mortgage indemnity clause as directed by Beneficiary and shall deliver renewals of the policy to Beneficiary at least 30 days before the expiration of the policy. Any proceeds that Beneficiary may receive under such insurance policy or policies may be applied by Beneficiary, at its discretion, to reduce the indebtedness secured hereby whether then matured or to mature in the future, and in such manner as Beneficiary may elect, or Beneficiary may permit Grantor to use the proceeds to repair or replace all the improvements damaged or destroyed and covered by the insurance policy or policies.

Payment of Indebtedness

2.06. Grantor will pay all of the indebtedness secured hereby, together with the interest and other charges thereon, when the same shall become due, in accordance with the terms of the Note or other instruments evidencing said indebtedness or evidencing any renewal or extension of the same or any part thereof.

Compliance

2.07. Grantor shall comply with all valid laws, ordinances and regulations, whether state, federal, or municipal, applicable to the Property and its ownership, use and operation (but Grantor shall have the right to contest any of the same, and need not comply with this covenant with respect to such contested items prior to the time a judgment therein becomes final and no longer appealable).

4

Loan Agreement

2.08. It is understood and agreed that the funds to be advanced on the Note hereinabove described are being advanced in accordance with a certain Loan Agreement made by and between Grantor and Permico Holdings, as borrowers and Beneficiary as Lender, dated of even date herewith (the "Loan Agreement"), which said Loan Agreement is incorporated herein by reference to the same extent and effect as if fully set forth herein and made a part of this Deed of Trust. This Deed of Trust secures the payment of all sums in the performance of all covenants required of Grantor by said Loan Agreement, and the failure of Grantor to keep and perform all of the covenants, conditions and agreements of said Loan Agreement, including payment of the principal sum of the said indebtedness and all interest and other charges provided for herein and therein and secured hereby shall, at the option of the Beneficiary of this Deed of Trust, become due and payable, anything herein contained to the contrary notwithstanding. In the event of any conflict between the terms and conditions of this Deed of Trust and the Loan Agreement, this Deed of Trust shall control.

ARTICLE III.

DEFAULT

Events of Default

3.01. As used herein, the term "Default" shall mean the occurrence of any of the following events:

(1) The failure of Grantor or Permico Holdings to pay or cause to be paid the indebtedness secured hereby or any part thereof, as it becomes due in accordance with the terms of the Note or notes which evidence it or where accelerated pursuant to any power to accelerate.

(2) The failure of Grantor or Permico Holdings to punctually and properly to perform any covenant, agreement or condition contained herein or in the Note, or any renewal or extension thereof, or any other instrument securing or evidencing the indebtedness or the Loan Agreement pursuant to this transaction and indebtedness.

(3) If Grantor, Permico Holdings, or any Guarantor or Maker of the Note secured hereby shall, after dismissal of either Grantor's or Permico Holdings chapter 11 case is dismissed or converted to a case or cases under Chapter 7 of Title 11 of the United States Code:

(a) execute an assignment for the benefit of itself or its creditors;

(b) become or be adjudicated bankrupt or insolvent;

(c) admit in writing its inability to pay its debts generally as they become due;

(d) apply for or consent to the appointment of a receiver, trustee or liquidator of Grantor or any such Guarantor or of all or a substantial part of itself or its assets;

(e) file a voluntary petition in bankruptcy or to take advantage of or seek any other relief under any bankruptcy, reorganization, debtor's relief, or other insolvency law now or hereafter existing;

(f) file an answer admitting the material allegations of, or consenting to, or default in, a petition filed against Grantor or any Guarantor in any bankruptcy, reorganization, or other insolvency proceedings; or

(g) institute or voluntarily be or become a party to any other judicial proceedings intended to effect a discharge of the debts of Grantor or any Guarantor, in whole or in part, or a postponement of the maturity or the collection thereof, or a suspension of any of the rights or powers of Beneficiary granted in the Note or in this Deed of Trust.

(4) The vesting in any party other than Grantor of the ownership of the Property or any part thereof.

(5) The discovery by Beneficiary that any statement, representation or warranty in the Loan Agreement, Note or this Deed of Trust or in any writing ever delivered to Beneficiary pursuant to the provisions hereof, is false, misleading or erroneous in any material respect.

(6)

(7) An order, judgment or decree shall be entered by any court of competent jurisdiction appointing a receiver, trustee or liquidator of Grantor or any Guarantor of all or any substantial part of Grantor's or any such Guarantor's assets.

(8) The failure of Grantor or any Guarantor to pay any money judgment against it at least ten (10) days' prior to the date on which the assets of Grantor or any such Guarantor may be sold to satisfy such judgment.

(9) The failure to have discharged within a period of thirty (30) days after the commencement thereof any attachment, sequestration or similar proceedings against any of Grantor's or any of Guarantor's assets.

(10) The filing of any lien, voluntary or involuntary, on any part of the Property that is not discharged within _____ days.

Effect of Default

3.02. On the occurrence of any Default, Beneficiary may at its option:

(1) remedy or cure such Default by taking such action necessary to do so, including, without limitation, making any payments on principal, interest, penalties and attorney's fees with respect to any prior lien indebtedness, payment of insurance premiums, payment of taxes and assessments, or such other action as Beneficiary deems necessary to protect the lien created by this Deed of Trust. Any sums so paid shall bear interest from the dates of such payment at the maximum rate allowed by law, and shall be paid by Grantor on demand and shall become a part of the debt secured hereby and recoverable as such in all respects; or

(2) declare all sums secured hereby immediately due and payable without demand or notice.

In the event of Default in the payment of said indebtedness when due, it shall thereupon, at any time thereafter, be the duty of the Trustee, or its successor or substitute as hereinafter provided, at the request of Beneficiary (which request is hereby conclusively presumed), to enforce this trust; and after advertising the time, place and terms of the sale of the above-described and conveyed real property for twenty-one (21) days prior to the date of sale by posting written or printed notices thereof on the courthouse door of each county in which such real property is situated and after sending written notice of the time, place and terms of the sale of the above-described and conveyed

6

real property by certified mail to each person obligated to pay the indebtedness secured hereby according to the records of the Beneficiary at least twenty-one (21) days preceding the date of sale at the most recent address as shown by the records of the Beneficiary; which notices may be posted or mailed by the Trustee acting, or by any person acting for him, to sell the above described and conveyed Property at public auction in accordance with such notice at the courthouse door of the county in which such Property is situated (provided where said Property is situated in more than one county, said above described and conveyed Property may be sold at the courthouse door of any one of such counties, and the notices shall designate the county where the Property will be sold), on the first Tuesday in any month between the hours of 10.00 a.m. and 4.00 p.m., to the highest bidder for cash, selling all of the Property as an entirety or in such parcels as the Trustee acting may elect, and make due conveyance to the Purchaser or Purchasers, with general warranty binding Grantor, its successors and assigns, and out of the money arising from such sale, the Trustee acting shall pay first all the expenses of advertising the sale and making the conveyance, and then to Beneficiary the full amount of principal, interest, attorney's fees and other charges due and unpaid on said Note and all other indebtedness secured hereby, rendering the balance of the sales price, if any, to Grantor, its successors and assigns, and the recitals in the conveyance to the Purchaser or Purchasers shall be full and conclusive evidence of the truth of the matters therein stated, and all prerequisites to said sale shall be presumed to have been performed and such sale and conveyance shall be conclusive against Grantor, its successors and assigns. It is specifically agreed that Beneficiary may be a purchaser at any such foreclosure sale and on being the highest bidder may have the amount for which the Property is sold credited on the indebtedness owed to it.

### Possession of Property

3.03. In case the lien hereof shall be foreclosed by Trustee's sale or by judicial action, the Purchaser at any such sale shall receive, as an incident to its ownership, immediate possession of the Property purchased, and Grantor agrees for Grantor and all persons claiming under Grantor, that if Grantor or any such person shall hold possession of said Property, or any part thereof, subsequent to foreclosure, Grantor or the parties so holding possession shall be considered as tenants at sufferance of the purchase at the foreclosure sale.

### Remedies

3.04. The rights and remedies hereinabove expressly conferred are cumulative of all other rights and remedies herein, or by law or in equity provided, and shall not be deemed to deprive Beneficiary or Trustee of any such other legal or equitable rights or remedies, by judicial proceedings or otherwise, appropriate to enforce the conditions, covenants and terms of this Deed of Trust and of the Note, and the employment of any remedy hereunder, or otherwise, shall not prevent the concurrent or subsequent employment of any other appropriate remedy or remedies.

## ARTICLE IV.

### AGREEMENTS BETWEEN BENEFICIARY AND GRANTOR

### Assignment of Rents

4.01. Beneficiary is hereby assigned, as further security of the indebtedness hereunder, all rents issuing or to hereafter issue from the Property, together with the proceeds of all sales contracts entered into for an individual unit or units or for an undivided interest in the property, no matter the form of such conveyance (collectively, the "Rents"). Beneficiary, its agents and

representatives, are hereby authorized, in the event of default in the payment of any indebtedness secured hereby, to collect such rents, or proceeds of such sales contracts, and to apply the collected rents, or proceeds of sales contracts, less the reasonable costs and expenses of collection thereof, to the payment of the indebtedness secured hereby, whether then matured or to mature in the future, and in such manner as Beneficiary may elect. The collection of such rents or sales proceeds by Beneficiary shall not constitute a waiver of its right to proceed with the enforcement of this Deed of Trust. Notwithstanding that this is an absolute assignment of the Rents and not merely the collateral assignment of, or the grant of a lien or security interest in the Rents, Beneficiary grants to Grantor a revocable license to collect and receive the Rents and to retain, use and enjoy such Rents. Such license may be revoked by Beneficiary only during the continuance of any Event of Default, in which case Grantor shall immediately, without any further act or request on part of Beneficiary, turn over to Beneficiary all Rents which it receives. Notwithstanding anything to the contrary contained in this Deed of Trust, to the extent this Deed of Trust or the Loan Agreement contains any notice or cure period, the date enforcement of Beneficiary's right under Chapter 64 of the Texas Property Code, the Texas Assignment of Rents Act ("TARA"), begins shall not be affected, extended or otherwise modified by reason of such periods. Notwithstanding the terms of this Deed of Trust or the Loan Agreement, it is the specific intent of each of the parties hereto for this Deed of Trust, and specifically, Section 4.01 hereof, to comply with the terms of TARA with respect to any and all Rents. Therefore, if any of the terms of TARA conflict with any of the terms of this Deed of Trust, the conflicting terms will be controlled by TARA which may, without limitation, result in Grantor's assignment of the Rents being deemed a collateral assignment as opposed to an absolute assignment

### Unsecured Portion of the Indebtedness

4.02. If any portion of the indebtedness hereunder cannot be lawfully secured by this Deed of Trust, then the first installment and other payments made under this Deed of Trust shall be applied to the discharge of the unsecured portion of the indebtedness and payments thereafter shall be applied to the discharge of the secured portion of the indebtedness.

### Condemnation

4.03. Beneficiary shall be entitled to receive any and all sums which become payable to Grantor as a result of condemnation proceedings or the threat thereof, or which become payable to Grantor as damages caused by public works or construction on or near the Property; all such sums are hereby assigned, as further security for the indebtedness hereunder, to Beneficiary who may, after deducting therefrom all expenses actually incurred, including attorney's fees, release such sums to Grantor or apply such sums to the reduction of the indebtedness hereby secured, whether then matured or to mature in the future, in such manner as Beneficiary may elect; and Beneficiary shall not, in any event or circumstances, be liable or responsible for the failure to collect, or to exercise diligence in the collection of any such sums.

### Lawful Rates of Interest

4.04. All agreements between Grantor and Beneficiary are hereby expressly limited so that in no contingency or event whatsoever shall the amount paid, or agreed to be paid, to Beneficiary for the use, forbearance or detention of the money due under the Note and other indebtedness secured hereby exceed the maximum amount permissible under applicable law. If, from any circumstances whatsoever, fulfillment of any provision hereof at the time performance of such provisions shall be due shall involve transcending the limit of validity prescribed by law, then, ipso facto, the

obligation to be fulfilled shall be reduced to the limit of such validity, and if from any circumstances Beneficiary should ever receive as interest an amount that would exceed the highest lawful rate, such amount that would be excessive interest shall be applied to the reduction of the principal amount owing under the Note secured hereby and not to the payment of interest or at the option of the Beneficiary such amount shall be refunded to Grantor.

Security Agreement

4.05. With respect to the real and personal property hereinabove described and forming a part of the Property, this Deed of Trust shall constitute a security agreement between Grantor and Beneficiary, and, cumulative of all other rights of Beneficiary hereunder, Beneficiary shall have all of the rights conferred on secured parties by the Uniform Commercial Code. Grantor will execute and deliver to Beneficiary all financing statements that may from time to time be required by Beneficiary to establish and maintain the validity and priority of the Beneficiary's security interest in such property, such financing statements to be executed in the manner and form required by law and to the satisfaction of Beneficiary. Grantor agrees to pay Beneficiary's charge, to the maximum amount permitted by law, for any statement by Beneficiary regarding the obligations secured by this Deed of Trust requested by Grantor or on behalf of Grantor. On demand, Grantor will promptly pay all costs and expenses of filing financing statements, continuation statements, partial releases and termination statements deemed necessary or appropriate by Beneficiary to establish and maintain the validity and priority of the security interest of Beneficiary, or any modification thereof and all costs and expenses of any searches reasonably required by Beneficiary. Beneficiary may exercise any or all of the remedies of a secured party available to it under the Uniform Commercial Code with respect to such property, and it is expressly agreed that if on Default Beneficiary should proceed to dispose of the collateral in accordance with the provisions of the Uniform Commercial Code, ten (10) days' notice by Beneficiary to Grantor shall be deemed to be reasonable notice under any provision of the Uniform Commercial Code requiring such notice; provided, however, that Beneficiary may at its option dispose of the collateral in accordance with Beneficiary's rights and remedies in respect of the real property pursuant to the provisions of this Deed of Trust, in lieu of proceeding under the Uniform Commercial Code.

The Grantor shall give advance notice in writing to Beneficiary of any proposed change in Grantor's name, identity, or legal structure and will execute and deliver to Beneficiary, prior to or concurrently with the occurrence of any such change, all additional financing statements that Beneficiary may require to establish and maintain the validity and priority of the Beneficiary's security interest with respect to any and all goods and property described or referred to herein.

Deed of Trust as Financing Statement

4.06. To the extent that any of the items of property described herein are goods that are or are to become fixtures related to the real estate described herein, and it is intended that, as to those goods, this Deed of Trust shall be effective as a financing statement filed as a fixture filing from the date of its filing for record in the real estate records of Nueces County, Texas. The name of the record owner of the Fee Real Property is Permico Midstream Partners, LLC, a Texas limited liability company. Information concerning the security interest created by this instrument may be obtained from the Beneficiary, as secured party, at Integra Midstream Partners, LLC, c/o Corpac Steel Products Corp., Attn: Jorge Woldenberg, 20803 Biscayne Blvd., Suite 502, Aventura, Florida 33180

9

## ARTICLE V.

## MISCELLANEOUS

### Successor Trustee

5.01. At the option of the Beneficiary, with or without any reason, a successor or substitute trustee may be appointed by Beneficiary without any formality other than a designation in writing of a successor or substitute trustee, who shall thereupon become vested with and succeed to all the powers and duties given to the Trustee herein named, the same as if the successor or substitute trustee had been named original Trustee herein; and such right to appoint a successor or substitute trustee shall exist as often and whenever Beneficiary desires. If Beneficiary is a corporation, the corporation may act through any authorized officer, or by an agent or attorney-in-fact properly authorized by any such officer. If the Beneficiary is a limited liability company, such limited liability company may act through any authorized manager, or by an agent, or by an attorney-in-fact properly authorized by a manager.

### Notice of Sale by Trustee

5.02. The notice of the time, place and terms of the sale of the above described and conveyed property by the Trustee required to be given to the Grantor pursuant to Paragraph 3.02, hereof, shall be in writing. Such notice shall be served by certified mail, and service of such notice shall be deemed completed on deposit of the notice, enclosed in a postpaid wrapper, properly addressed to the Grantor at the address as shown by the records of the Beneficiary, in a post office or official depository under the care and custody of the United States Postal Service. Until changed in accordance herewith, the following address is specified as the most recent address of the Grantor as shown by the records of Beneficiary:

GRANTOR:

William R. Greendyke, Chapter 11 Trustee
Permico Midstream Partners, LLC
9301 Southwest Freeway Ste 308
Houston, Texas 77074

and

William R. Greendyke, Chapter 11 Trustee
Permico Midstream Partners, LLC
1301 McKinney, Suite 5100
Houston, Texas 77010-3095

With a copy to:
Jason L. Boland
Norton Rose Fulbright LLP
1301 McKinney, Suite 5100
Houston, Texas 77010-3095

Other Notices

5.03.  Whenever any notice or demand, other than the notice of sale by Trustee described in Paragraph 5.02, hereof, is required or permitted hereunder, such notice or demand must be in writing.  Any notice, demand, or document required or permitted to be delivered hereunder shall be deemed to be delivered,  three (3) days after same is deposited in the United States mail, postage prepaid, certified mail, return receipt requested addressed to the person who is to receive it at the address which such person has theretofore specified by written notice delivered in accordance herewith.  Until changed in accordance herewith, the following addresses are specified as the addresses for Grantor and Beneficiary for receiving notices, demands, payments and documents:

        BENEFICIARY:

                Integra Midstream Partners, LLC
                c/o Corpac Steel Products Corp.
                Attn: Jorge P. Woldenberg
                20803 Biscayne Blvd., Suite 502
                Aventura, Florida  33180

        With a copy to:

                Trent L. Rosenthal
                Rosenthal Law Firm, PLLC
                675 Bering Drive, Suite 150
                Houston, Texas 77057

        GRANTOR:

                William R. Greendyke, Chapter 11 Trustee
                Permico Midstream Partners, LLC
                9301 Southwest Freeway Ste 308
                Houston, Texas 77074

                and

                William R. Greendyke, Chapter 11 Trustee
                Permico Midstream Partners, LLC
                1301 McKinney, Suite 5100
                Houston, Texas 77010-3095

        With a copy to:

                Jason L. Boland
                Norton Rose Fulbright LLP
                1301 McKinney, Suite 5100
                Houston, Texas 77010

When included within the term "Grantor" or "Beneficiary" there is more than one person, shall jointly arrange among themselves for their joint execution and delivery of a notice to the other, specifying some person at some specific address for the receipt of notices, demands, payments or

documents. All persons included within the terms "Grantor" and "Beneficiary" shall be bound by notices, demands, payments and documents given in accordance with the provisions of this paragraph to the same extent as if each had received such notice, demand, payment of document.

Texas Law to Apply

5.04. This Deed of Trust shall be construed under and in accordance with the laws of the State of Texas.

Parties Bound

5.05. This Deed of Trust shall be binding on and inure to the benefit of the parties hereto and their respective successors and assigns except as otherwise expressly provided herein.

Legal Construction

5.06. In case any one or more of the provisions contained in this Deed of Trust shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision hereof and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

Time of Essence

5.07. Time is of the essence of this Deed of Trust.

Second Lien

5.08. The lien being granted herein on the property described in Exhibit 2 shall only encumber Grantor's right, title and interest in such property and such lien shall be subordinate to the Corpac Liens (as such term is defined in the Loan Agreement).

Other

5.09. **TEXAS FINANCE CODE SECTION 307.052**. COLLATERAL PROTECTION INSURANCE NOTICE: (A) GRANTOR IS REQUIRED TO: (i) KEEP THE MORTGAGED PROPERTY INSURED AGAINST DAMAGE IN THE AMOUNT BENEFICIARY SPECIFIES; (ii) PURCHASE THE INSURANCE FROM AN INSURER THAT IS AUTHORIZED TO DO BUSINESS IN THE STATE OF TEXAS OR AN ELIGIBLE SURPLUS LINES INSURER; AND (iii) NAME BENEFICIARY AS THE PERSON TO BE PAID UNDER THE POLICY IN THE EVENT OF A LOSS; (B) GRANTOR MUST, IF REQUIRED BY BENEFICIARY, DELIVER TO BENEFICIARY A COPY OF THE POLICY AND PROOF OF THE PAYMENT OF PREMIUMS; AND (C) IF GRANTOR FAILS TO MEET ANY REQUIREMENT LISTED IN CLAUSE (A) OR (B), BENEFICIARY MAY OBTAIN COLLATERAL PROTECTION INSURANCE ON BEHALF OF GRANTOR AT GRANTOR'S EXPENSE.

5.10. For the avoidance of doubt, any non-judicial foreclosure sale, and notice thereof, pursuant to this Deed of Trust shall be made and conducted in accordance with the then-applicable procedures, time periods and other requirements of Chapter 51 of the Texas Property Code (or any successor statute).

5.11 In no event shall the provisions of Chapter 346 of the Texas Finance Code (which regulates certain revolving credit loan accounts and revolving triparty accounts) apply to the loans and indebtedness evidenced by the Loan Documents and/or secured hereby.

12

EXECUTED on the date of the acknowledgement set forth below to be effective as of the __ day of _____, 2020.

Permico Midstream Partners, LLC

By_____
William R. Greendyke in his capacity as Chapter 11 Trustee for Permico Midstream Partners, LLC under Case No. 20-32437(MI), pending in the United States Bankruptcy Court for the Southern District of Texas

Acknowledgement

State of Texas          §
                              §
County of Harris       §

Before me, the undersigned Notary Public for the State of Texas, on this day personally appeared William R. Greendyke (proved to me through presentation of his Texas Driver's License) whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed and in the capacity therein stated.

_____
Notary Public for the State Texas

13

**SUBJECT TO LENDER'S REVIEW AND APPROVAL**

**Loan Agreement**

This Loan Agreement is made and entered into effective this ____ day of December 2020, by and between Integra Midstream Partners, LLC, a Delaware limited liability company (the "Lender"), and Permico Midstream Partners LLC, a Texas limited liability company, and Permico Midstream Partners Holdings, LLC, a Texas limited liability company (collectively "Borrowers").

*Recitals*

The Borrowers are Texas limited liability companies engaged in developing a project to build (i) pipelines from the Permian Basin and Eagle Ford shale regions to Corpus Christi, Texas, (ii) two fractionator trains, (iii) an NGL salt cavern storage facility, and (iv) one or more export terminals with spurs to the gas liquids storage and trading hub in Mont Belvieu, Texas (collectively, the "Project").

On May 4, 2020, (the "Filing Date"), the Borrowers filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court"), which cases are being jointly administered under Case No. 20-32437 (the "Cases").

On May 12, 2020, the Court ordered that a Chapter 11 Trustee be appointed for the Borrowers.

On May 18, 2020, the Office of the United States Trustee filed a Notice of Appointment of Chapter 11 Trustee and Application for Order Approving Appointment of Chapter 11 Trustee, seeking approval of William R. Greendyke to serve as the Chapter 11 Trustee (the "Trustee") in the Case for the Borrowers.

On May 22, 2020, the Bankruptcy Court entered its *Order Approving Appointment of Chapter 11 Trustee in the Jointly Administered Permico Midstream Partners Holdings, LLC Cases* approving the appointment of the Trustee for the Borrowers.

Pursuant to Section 364 of the Bankruptcy Code, Borrowers now desire to borrow from Lenders, and Lender desires to loan to Borrowers, the principal sum of up to the maximum amount of Seven Hundred Fifty Thousand and No/100s US DOLLARS (USD$750,000.00) on the terms and conditions set forth in this Agreement and the other Loan Documents (hereinafter defined).

**Agreement**

For and in consideration of the premises and consideration set forth herein, Lender and Borrowers hereby covenant and agree as follows:

**1.     THE LOAN**

a.     The loan made the subject of this Agreement (the "Loan") is a non-revolving term loan evidenced by Borrowers' Promissory Note of even date herewith payable to the order of Lender in the principal face amount of $750,000.00, with interest and principal payable as provided

1

therein, and any renewals, extensions and modifications thereof (the "Note"). All proceeds of the Loan shall be used by Borrowers solely for the purposes set forth in **Exhibit A** attached hereto and made a part hereof, and for no other purpose, without the prior written consent of Lender.

b.      Lender hereby commits that, subject to the conditions provided herein below, the principal amount of the Loan shall be advanced in two advances, each in the amount of $375,000. The first loan installment (the "Initial Advance") shall be funded within two (2) business days of entry of an interim order by the Court approving the Loan and Loan Documents (as hereinafter defined) in form and content approved in advance by Lender (the "Interim Order"), and the second loan installment (the "Second Advance") shall be funded within two (2) business days of entry of an order by the Court approving the Loan and Credit Documents in form and content approved in advance by Lender, and such order not being subject to a stay (the "Final Order"). The Interim Order and Final Order shall specifically provide that the Lender is entitled to the protections of Section 364 (e) of the Bankruptcy Code that the Loan is being made in "good faith".

c.      Borrowers shall be jointly and severally obligated for all principal and interest provided for in the Loan and for all obligations of Borrowers provided for in this Agreement.

d.      Pursuant to Section 364(c)(1) of the Bankruptcy Code, Borrowers' obligations under this Loan Agreement, the Note, and the Deed(s) of Trust shall at all times constitute allowed administrative expense claims in the Case having priority over all administrative expenses of the kind specified in Sections 503(b) or 507(b) of the Bankruptcy Code, i.e., the obligations shall be a Super Priority Claim in favor of Lender.

**2.      FEES**

a.      Borrowers shall pay to Lender a loan commitment fee in the amount of $22,500. This fee shall be due and payable to Lender upon funding of the Initial Advance, and the Lender may withhold such fee from the Initial Advance.

b.      Borrowers shall pay the premium for the cost of a mortgagee title insurance policy covering the property described in **Exhibit B** attached hereto and made a part hereof, and such other escrow fees, recording fees, copying fees, and postage (and any overnight courier charges) in connection with closing and funding the Loan. The title company selected by the Lender handling the closing of the Loan is hereby authorized to collect such premium, fees, and expenses from the Initial Advance.

c.      Borrowers shall pay Lender's attorney's fees for negotiation and the preparation of (i) the Letter of Intent executed between the parties as of December 12, 2020, (ii) the Loan Agreement, (iii) the Deed of Trust, and for reviewing, negotiating, any other papers, pleadings, and proposed order(s) reasonably necessary to complete the Loan. Fees incurred through the closing and funding of the Initial Advance shall be retained by Lender from the Initial Advance.

**3.      SECURITY.**

SUBJECT TO LENDER'S REVIEW AND APPROVAL

Pursuant to Section 364(c)(2) of the Bankruptcy Code, Permico Midstream Partners, LLC shall grant, or cause to be granted, to Lender the following:

a.    a first priority lien on the real property described on **Exhibit B** attached hereto and made a part hereof, which lien shall at all times be secured by a perfected first priority Lien on the Real Property, priming the Corpac Liens, subject only to local ad valorem taxes for the year 2021 which are not yet due or payable; and

b.    a lien on the pipeline easements, rights of way, and contract rights described in **Exhibit C** attached hereto and made a part hereof, subordinate only to the Corpac Liens (as defined below) and

c.    a lien and security interest on all other property described in Deed of Trust and Security Agreement set forth in **Exhibit D** hereto and made a part hereof

Such liens shall be evidenced by one or more deeds of trust in substantial conformity with the form attached hereto as **Exhibit D** and made a part hereof, which shall be executed and delivered to Lender at Closing.

As used in this Loan Agreement, the term "Collateral" means all of the property and interests described in the Deed of Trust and Security Agreement.

As used in this Loan Agreement, the term "Corpac Liens" shall mean those statutory lien affidavits listed on **Exhibit E** hereto and made a part hereof.

## 4. SECTION 364 PRIORITY

Pursuant to Section 364(c)(1) of the Bankruptcy Code, Borrowers' obligations under this Loan Agreement, the Note, and the Deed(s) of Trust (collectively, the "Loan Documents") shall always constitute allowed administrative expense claims in the Cases having priority over all administrative expenses of the kind specified in Sections 503(b) or 507(b) of the Bankruptcy Code, i.e., the obligations shall be a Super Priority Claim in favor of Lender.

## 5. CONDITIONS TO FUNDING

a.    Lender's obligation to make the Initial Advance is subject to the satisfaction of the following conditions:

i.    the Court shall have entered on the docket of the Case in its Case Management/Electronic Case Files system an Interim Order approving the Loan Documents, which shall:

1.    specifically find and conclude that (i) the Lender has acted in good faith, (ii) the Loan is made in good faith and is subject to protection of Section 364(e) of the Bankruptcy Code, (iii) the Loan shall have Super-priority Claim status as set forth in Section 4 hereof and senior priming over other Liens described

in Sections 3(a) and 3(b) above;

2.  have been entered, upon an application or motion of the Borrowers reasonably satisfactory in form and substance to the Lender, on such prior notice to such parties as may in each case be reasonably satisfactory to the Lender;

3.  authorize extensions of credit in amounts satisfactory to the Lender;

4.  approve the payment by the Borrowers of all of the Fees set forth in Section 2 hereof;

5.  be in full force and effect, and

6.  not have been vacated, stayed, reversed, modified or amended in any respect.

ii.   If the Interim Order is the subject of a pending appeal in any respect, neither the making of the Loan nor the performance by the Borrowers of any of the obligations hereunder or under the Loan Documents or under any other instrument or agreement referred to herein shall be the subject of a presently effective stay pending appeal.

iii.   The Borrowers shall have executed and delivered to the Lender the Note in substantially the form of **Exhibit A** hereto and made a part hereof.

iv.   Permico Midstream Partners, LLC ("Permico Partners") shall have executed and delivered to the Lender the Deed of Trust in substantially the form of **Exhibit D** hereto and made a part hereof (the "Deed of Trust") which shall provide Lender with, among other things, (1) a first priority deed of trust lien on all of Permico Partners' real property in Nueces County, Texas as described on **Exhibit B** attached hereto and made a part hereof for all purposes and (2) a second priority lien on the pipeline easements, contract rights, and rights of way ("Right Of Way") set forth in in **Exhibit C** attached hereto and made a part hereof.

v.   Borrowers hall have provided to the Lender all of the following: (1) unredacted copies of all executed term sheets between either of the Borrowers and each prospective shipper of any hydrocarbons through the Project ("Prospective Shipper"), (2) unredacted drafts of all proposed final agreements with each Proposed Shipper; (3) unredacted copies of all letters of intent presented to the Trustee from prospective purchasers of some or all of the assets of either or both of the Borrowers; (4) unredacted copies of all proposed asset purchase agreements between (a) either or both of the Borrowers and (b) a third party

SUBJECT TO LENDER'S REVIEW AND APPROVAL

purchaser; (5) unredacted copies of all executed asset purchase agreements between (a) either or both of the Borrowers and (b) a third party purchaser; (6) unredacted copies of all drafts of letters of intent with respect to prospective providers of new capital to either of the Borrowers (whether in the form of equity or debt); (7) unredacted copies of all executed letters of intent with respect to prospective providers of new capital to either of the Borrowers (whether in the form of equity or debt).

vi.  The Interim Order will have been entered and will not have been stayed, amended, vacated, reversed or rescinded except as approved in writing by the Lender, in its sole discretion.

vii.  On the date of the making of the Loan, the Interim Order shall have been entered by the Court and shall not have been amended, stayed, vacated or rescinded except as approved in writing by the Lender, in its sole discretion.

viii.  Lender shall have received the written opinion of counsel to the Trustee addressed to Lender opining that (1) the liens described in Section 3 above are valid and enforceable against the property described therein; and (2) the Interim Order is legally effective and enforceable in accordance with its terms and applicable law, (3) no stay of the effect of the Interim Order has been requested or issued, and (4) the Trustee is empowered and authorized by law to execute and deliver to Lender the Loan Documents.

b.  Lender's obligation to make the Second Advance is subject to the satisfaction of the following conditions:

i.  The Final Order will have been entered and will not have been stayed, amended, vacated, reversed or rescinded except as approved in writing by the Lender, in its sole discretion.

ii.  Lender shall have received a title insurance policy in form and substance acceptable to Lender from an insurance carrier acceptable to Lender which Title Policy shall insure that the status of title of the real property described in **Exhibit B** attached hereto and made a part hereof is consistent with the representations and warranties set forth herein.

iii.  Lender shall have received the written opinion of counsel to the Trustee addressed to Lender opining that (1) the Final Order is legally effective and enforceable in accordance with its terms and applicable law, and (2) no stay of the effect of the Final Order has been requested or issued.

**6.    WARRANTIES AND REPRESENTATION**

5

Borrowers represent to Lender as follows:

a.    Borrowers have taken all steps necessary under the Bankruptcy Code and state law to obtain the Bankruptcy Court's permission to enter into and deliver to Lender this Loan Agreement, and to execute and deliver to Lender the executed Note and executed Deed(s) of Trust, and to bind the bankruptcy estates of Borrowers to the obligations set forth in the Loan Agreement, the Note, and the Deed(s) of Trust.

b.    Permico Midstream Partners, LLC has good and marketable title to the real property described in **Exhibit B** and **Exhibit C** attached hereto and made a part hereof, and any and all options on the real property described on **Exhibit B** having been granted to Jeff Beicker ("Beicker") shall have expired and be of no force or effect and Beicker shall deliver an affidavit in recordable form subordinating any claim or interest he has to Lender and acknowledging expiration of said options.

c.    The lien granted in the Deed of Trust on the property described in **Exhibit B** shall be a first priority lien on the real property described on **Exhibit B** attached hereto and made a part hereof, which lien shall at all times be secured by a perfected first priority lien on the real property, priming the Corpac Liens, pursuant to Section 364(d) of the Bankruptcy Code, subject only to local ad valorem taxes for the year 2021 which are not yet due and payable.

d.    The lien granted in the Deed of Trust on the property described in **Exhibit C** shall be a lien on the pipeline easements, rights of way, and contract rights described in **Exhibit C** attached hereto and made a part hereof, subordinate only to the Corpac Liens.

e.    The execution, delivery and performance of this Agreement, the Note, and the Deed(s) of Trust will not violate the governing documents of Borrowers, any court order, or judicial decree or applicable law binding on Borrowers or affecting either's property, or any post-petition agreement, mortgage, indenture or contract binding on Borrowers or affecting either's property.

f.    The Borrowers are not aware of any legal actions, motions, or proceedings pending or threatened in writing against either of the Borrowers which prohibit the Borrowers from entering into this Agreement, or which prohibit the Borrowers from executing or delivering the Note and Deed(s) of Trust to Lender.

## 7.    AFFIRMATIVE COVENANTS

From the date hereof and for so long as any amount shall remain outstanding or unpaid under the Loan Documents, Borrowers agree that, unless the Lender shall otherwise consents in writing, the Borrowers shall do the following:

a.    Use the proceeds of the Loan solely and exclusively for payment of professional fees and expenses and the costs of administering Borrowers' bankruptcy cases, in

6

accordance with, and subject to the amounts set forth on, the Budget attached hereto as **Exhibit A** and made a part hereof for all purposes, provided, however, in no event shall Borrowers use any proceeds of the Loan to fund or pay attorneys' fees or costs incurred by Borrowers or the Trustee in connection with any of the following actions or evaluation of prospective legal actions: (1) pending Adversary Proceeding No. 20-03126, styled *Corpac Steel Products Corp. vs. HGC Midstream Inv. LLC,* (2) Adversary Proceeding No. 20-03173, styled *Edgen Murray v. HGC Midstream INV, LLC*, (3) any action adverse to or against Lender, (4) any action challenging the extent, validity or priority of Corpac Liens, or (5) any objection to any proof of claim filed by Corpac in the Cases.

b.     Deliver promptly, through the Trustee, to Lender:

   i.      copies of the Borrowers' Monthly Operating Reports filed in the Case detailing all expenses paid and the party that received the payment;

   ii.     such other information regarding the operations, business affairs and financial condition of the Borrowers, or compliance with the terms of any material loan or financing agreements as the Lender may request; and

   iii.    copies of all pleadings, motions, applications, judicial information, financial information and other documents filed by or on behalf of any of the Borrowers or the Trustee with the Bankruptcy Court in the Case[s], or distributed by or on behalf of the Borrowers to any official committee appointed in the Cases.

   iv.     Through the Trustee, monthly written reporting to the Lender of all income and expenses of the Borrowers in form reasonably satisfactory to the Lender.

c.     Provide access to Lender and its representatives access, during reasonable business hours, to the data room for Borrowers established and maintained by GulfStar Group, II, Ltd.

d.     Provide to Lender and its representatives within 24 hours of the Trustee's receipt, (1) unredacted copies of executed term sheets between either of the Borrowers and each prospective shipper of any hydrocarbons through the Project (each, a "Prospective Shipper") , (2) unredacted drafts of proposed final agreements with each Prospective Shipper; (3) unredacted copies of any letters of intent presented to the Trustee from prospective purchasers of some or all of the assets of either or both of the Borrowers; (4) unredacted copies of any proposed asset purchase agreements between (a) either or both of the Borrowers and (b) a third party purchaser; (5) unredacted copies of any executed asset purchase agreements between (a) either or both of the Borrowers and (b) a third party purchaser; (6) unredacted copies of any drafts of letters of intent with respect to prospective providers of new capital to either of the Borrowers (whether in the form of equity

7

or debt); (7) unredacted copies of any executed letters of intent with respect to prospective providers of new capital to either of the Borrowers (whether in the form of equity or debt).

In addition, from the date hereof and for so long as any amount shall remain outstanding or unpaid under the Loan Documents Borrowers agree that, unless the Lender shall otherwise consents in writing, Borrowers' core management team, representatives of Borrowers' investment banker, GulfStar Group II, Ltd. (including Ron Chamness and Craig Janies), and the Trustee and his counsel shall, at least once weekly, participate in a conference telephonic or video calls with Lender and its counsel concerning the following: (1) the status of the Cases, (2) any potential transactions with prospective shippers of NGLs through the proposed pipeline of Permico Midstream Partners, LLC, (3) any potential bidders for the purchase of assets of either of the Borrowers, and (4) any potential investors of equity or credit to either of the Borrowers (the "Weekly Update Calls").   To facilitate such calls, the Borrowers (through the Trustee) shall propose by email to Lender (through Lender's counsel, Trent L. Rosenthal, at trosenthal@rosenthallaw.com) a date, time, and communication means for the Weekly Update Calls no later than 12:00 noon (Houston, Texas time) on each Monday (unless such Monday is a legal holiday, in which event such email shall be sent no later than 12:00 noon (Houston time) on the next day which is not a legal holiday.

## 8.   NEGATIVE COVENANTS.

From the date hereof and for so long as any amount shall remain outstanding or unpaid under this Agreement, unless the Lender shall otherwise consent in writing, the Borrowers will not (and will not apply to the Bankruptcy Court for authority to):

a.   Incur, create or assume any contractual Lien on any asset of either of the Borrowers, now owned or hereafter acquired by either of the Borrowers, other than (i) liens which were existing on the Filing Date, (ii) customary liens of banks in connection with deposit accounts and cash management; and (iii) liens in favor of the Lender;

b.   Contract, create, incur, assume or suffer to exist any indebtedness for borrowed money (other than in the ordinary course of business), except for indebtedness to the Lender under the Loan Documents;

c.   Incur, create, assume, suffer to exist or permit any other Super priority Claim which is *pari passu* with or senior to (i) the claims of the Lender against the Borrowers or (ii) the Lender's liens on the property described in **Exhibit B** and **Exhibit C** attached hereto and made a part hereof.

d.   Sell or otherwise dispose of the security described in Section 3 of this Agreement unless the proceeds from such sale or disposition are sufficient to pay in full and will be used to pay Lender in full: (1) all amounts owing to Lender on the Loan and (2) all fees and expenses owing to Lender under this Agreement.

e.   Modify or alter in any material manner the nature and type of its business as

**SUBJECT TO LENDER'S REVIEW AND APPROVAL**

conducted at or prior to the Filing Date or the manner in which such business is conducted (except as required by the Bankruptcy Code).

**9.     EVENTS OF DEFAULT**.

A default ("Default") shall exist if any one or more of the following shall occur:

a.     Borrowers shall fail to make the payment of any installment of principal, interest or other amounts due on the Loan or any other obligation (whether now existing or hereafter incurred) of Borrowers to Lender or any affiliate of Lender under the Loan Documents when due and payable, whether at maturity or otherwise; or

b.     Borrowers shall fail to perform any other term, covenant or agreement set forth in (i) this Agreement and such failure is not cured within the specified cure period, or if no cure period is otherwise specified, then within 30 (thirty) days after Borrower's receipt of written notice specifying such failure; or (ii) any of the other Loan Documents subject to any applicable grace or cure period set forth in such other Loan Documents (if any); or

c.     Any representation or warranty herein contained or shall prove to have been incorrect or misleading in any material respect when made, and to the extent that such matter is susceptible of cure, the subject matter has not been cured within 30 days after Borrower's receipt of written notice specifying such default (provided, however, the said 30 day period shall be extended to 90 days if such default is of such a nature that it is not susceptible of being cured within 30 days and if Borrowers commence good faith efforts to cure such default within 30 days and thereafter diligently pursues such efforts); or

d.     A Default shall have occurred under any of the other Loan Documents.

**10.     ENVIRONMENTAL INDEMNITY**

Borrowers covenant and agree that Borrowers and the property described in **Exhibit B** and **Exhibit C** both attached hereto and made a part hereof (collectively, the" Property") shall at all times remain in full compliance with all Environmental Laws. Borrowers shall not, nor permit any other person to manufacture, process, distribute, use, transport, handle, treat, store, dispose, emit, discharge, leak, spill or release any Hazardous Substance on, in, under or from the Mortgaged Property except in compliance with Environmental Law.

Notwithstanding anything to the contrary contained herein, Borrowers shall indemnify, defend and hold Lender and its successors and assigns harmless from and against any and all claims, demands, suits, losses, damages, assessments, fines, penalties, costs or other expenses (including reasonable attorneys' fees and court costs) arising from or in any way related to the following items or matters related to or arising from the Property:

(i)     any actual or alleged breach of any of either of Borrowers' covenant contained in

this Section 10;

(ii)    actual or threatened damage to the environment caused by any Hazardous Substance,

(iii)    any violation of any Environmental Law;

(iv)    release or alleged release of Hazardous Substances at the Property, whether arising from either of the Borrowers' business operations or otherwise,

(v)    gaseous emissions arising from either of Borrowers' business operations; or

(vi)    the use or existence of Hazardous Substances at the Property, whether such claim proves to be true or false; provided that the foregoing indemnity shall not be applicable to any conditions or matters (a) arising or resulting from the gross negligence or willful misconduct of Lender or its agents, contractors, successors or assigns or (b) first existing or occurring after the date on which the lien of the Deed of Trust is foreclosed or a conveyance in lieu of such foreclosure is effective, or the date on which Lender, its agents or any receiver appointed thereby otherwise obtains possession of the Property.

Borrowers further agrees that such indemnity obligations shall include, but are not limited to, liability for damages resulting from the personal injury or death of an employee of either of the Borrowers, regardless of whether either of Borrowers has paid the employee under the workmen's compensation laws of any state or other similar federal or state legislation for the protection of employees.

"Hazardous Substance" means any hazardous, toxic or dangerous waste, substance, or material including, but not limited to, any elements, compound, substance or material which are now or hereafter (i) identified in Section 101(14) of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601(14), and as set forth in 40 C.F.R. § 302, as the same may be amended from time to time, (ii) determined to be toxic, a pollutant or contaminant, under any Environmental Law, (iii) defined as petroleum and petroleum products, and (iv) asbestos, radon, polychlorinated biphenyls and such other elements, compounds, materials, substances or waste which are otherwise dangerous, hazardous, harmful or deleterious to human or animal health or safety, or the environment.

"Environmental Law" means any federal, state or local law, enactment, statute, code, ordinance, order, rule, regulation, judgment, decree, writ, injunction, franchise, permit, certificate, license, authorization or other direction or requirement of any federal, state, county, municipal or other government department, entity, authority, commission, board, bureau, court, agency or any instrumentality thereof, as same may be amended from time to time, whether now in existence or established or hereafter enacted, promulgated, adopted, entered or issued, both within and outside the present contemplation of the parties hereto, relating to pollution or protection of the environment, including but not limited to, (i) CERCLA, 42 U.S.C. §§ 9601-9657, (ii) the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), Public Law 99-499, 100

SUBJECT TO LENDER'S REVIEW AND APPROVAL

Stat. 1613, (iii) the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901-6987, (iv) the Hazardous Materials Transportation Act, 49 U.S.C. § 1801 et seq.; (v) the Federal Water Pollution Control Act, 33 U.S.C. § 1251 et seq.; (vi) the Clean Air Act, 42 U.S.C. § 7401 et seq.; (vii) the Toxic Substances Control Act, 15 U.S.C. § 2601 et seq.; (viii) the Safe Drinking Water Act, 42 U.S.C. § 300f et seq.; (ix) any common law of nuisance or trespass; (x) any law, rule or regulation relating to emissions, discharges, releases or threatened releases of pollutants, contaminants or chemicals, or industrial, toxic or other Hazardous Substances or waste into the environment (including without limitation, ambient air, surface water, groundwater, land surface or subsurface strata); (xi) any law otherwise relating to the manufacture, processing, distribution, use, treatment, storage, disposal, transport or handling of pollutants, contaminants or chemicals or industrial, toxic or other Hazardous Substances or wastes; and (xii) any other designations as toxins, pollutants or contaminants by any other federal, state, county, municipal or other governmental department, entity, authority, commission, board, bureau, court agency or any instrumentality of any of them (including, without limitation, the United States Environmental Protection Agency).

The obligations of Borrowers under this Section shall survive the repayment of the Loan.

## 11.   NOTICES

Any notices to Borrowers given hereunder shall be in writing and shall be given in accordance with Section 5.03 of the Deed of Trust. Any notices to Lender given hereunder shall be in writing and given in accordance with Section 5.03 of the Deed of Trust.

## 12.   MISCELLANEOUS.

d.   All costs and expenses incurred in performing and complying with Borrowers' covenants set forth in the Loan Documents will be borne solely by Borrowers. Borrowers shall promptly, upon written demand: (a) pay all reasonable legal fees incurred by Lender in connection with the preparation, negotiation, execution and administration of this Agreement and any and all other Loan Documents contemplated hereby (including any amendments hereto or thereto or consents, releases or waivers hereunder or thereunder); (b) pay all reasonable, out-of-pocket expenses of Lender in connection with the disbursement of the Loan and administration of this Agreement and the other Loan Documents; (c) reimburse Lender, promptly upon written demand, for all amounts reasonably expended, advanced or incurred by Lender to satisfy or enforce any obligation of Borrowers under this Agreement or any other Loan Documents that arise in connection with a breach or Default by Borrowers, which amounts will include all court costs, reasonable attorneys' fees (including, without limitation, for trial, appeal or other proceedings), fees of auditors and accountants and investigation expenses reasonably incurred by Lender in connection with any such matter; and (d) pay any and all other reasonable costs and expenses required to satisfy any provision of this Agreement, including, without limitation, documentary taxes and recording, brokerage, escrow, closing costs, fees of attorneys, surveyors, appraisers, accountants and inspectors, and title insurance premiums.

e.  No delay by Lender in exercising any right shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right preclude any other or future exercise thereof or the exercise of any other right. Any of the foregoing covenants and agreements may be waived by Lender, but only in writing signed by Lender. Borrowers expressly waive presentment, demand, protest, notice of intent to accelerate maturity, notice of acceleration of maturity and all other notices of any kind, except for any notices expressly required under the terms of this Agreement of the other Loan Documents.

f.  No notice to or demand on Borrowers in any case shall, of itself, entitle Borrowers to any other or further notice or demand in similar or other circumstances. No delay or omission by Lender in exercising any power or right hereunder shall impair any such right or power or be construed as a waiver thereof or any acquiescence therein, nor shall any single or partial exercise of any such power preclude other or further exercise thereof, or the exercise of any other right or power thereafter.

g.  This agreement and the rights and obligations of the parties hereunder shall be governed by and interpreted in accordance with the laws of the State of Texas, without reference to conflict of law principles.

h.  THE EXCLUSIVE VENUE FOR ANY DISPUTES BETWEEN THE PARTIES RELATING TO THE LOAN, THIS AGREEMENT OR ANY OTHER LOAN DOCUMENTS SHALL BE IN THE FEDERAL COURTS HAVING JURISDICTION AND SITTING IN THE CITY OF HOUSTON, TEXAS.

i.  No modification, consent, amendment or waiver of any provision of this Agreement, nor consent to any departure by Borrowers therefrom, shall be effective unless the same shall be in writing and signed by Lender and Borrower, and then shall be effective only in the specific instance and for the purpose for which given. This Agreement is binding upon Lender, Borrowers and their respective successors and assigns, and inures to the benefit of Lender, Borrowers and their respective successors and assigns.

j.  The obligations, rights and remedies set forth in the Loan Documents shall be cumulative. In all regards, all terms and provisions of the Loan Documents are intended to be read and integrated in a harmonious and consistent manner. In the event of any conflict or inconsistency between the terms and provisions of this Agreement and any other of the Loan Documents, the terms and provisions of this Agreement shall control. Time is of the essence of this Agreement.

k.  Notwithstanding anything herein or in any of the other Loan Documents to the contrary, Lender shall have no obligation to renew the Loan or to extend the maturity of the Promissory Note referred beyond the maturity date stated therein.

l.   It is the intention of the parties hereto to comply strictly with all applicable usury and similar laws; and, accordingly, in no event and upon no contingency shall the Lender ever be entitled to receive, collect, or apply as interest any interest, fees, charges or other payments equivalent to interest, in excess of the maximum interest rate permitted by applicable law (the "Maximum Rate"). In determining if interest exceeds the Maximum Rate, interest shall be spread over the entire contracted for term of the Loan. Any provision hereof, or of any other agreement executed by Borrowers that would otherwise operate to bind, obligate or compel Borrowers to pay interest in excess of such Maximum Rate or fees in excess of the maximum lawful amount shall be construed to require the payment of the Maximum Rate or amount only. The provisions of this Section shall be given precedence over any other provisions contained herein or in any other agreement applicable to the Loan that is in conflict with the provisions of this Section.

m.   Lender may, at Lender's sole cost and expense, sell, transfer, or assign all or any portion of the Loan and the Loan Documents or grant participations in the Loan or in the Loan Documents. Lender may forward to each current and prospective purchaser, transferee, assignee, and participant documents and information relating to the Loan, Borrowers and the Property, whether furnished by Borrowers or otherwise, as Lender determines necessary or desirable.

n.   In this Agreement wherever one of the parties hereto is named or referred to, the heirs, legal representatives, successors and assigns of such party will be included and all covenants and agreements contained in this Agreement by or on behalf of Borrowers or by or on behalf of Lender will bind and inure to the benefit of their respective heirs, legal representatives, successors and assigns, whether so expressed or not. Notwithstanding the foregoing, Borrowers will have no right to assign either's rights hereunder or the proceeds of the Loan without the prior written consent of Lender. Lender shall have the right to assign or pledge any portion of this Agreement and/or the Loan. In the event of such an assignment or pledge, Borrowers shall agree to such modifications to this Agreement as will facilitate such assignment or pledge, provided that such modifications will not expand or alter Borrowers' obligations or liabilities or limit or reduce Borrowers' rights or benefits under the Loan Documents. It is understood that any assignment or pledge by Lender will not result in additional expense to Borrowers. Additionally, Lender shall have the right to disseminate any information it has pertaining to the Loan, including without limitation, complete and current credit information on Borrowers.

o.   Borrowers and Lender agree that the obligations of Lender under any letter of intent providing for the extension of credit to Borrowers with respect to the Property are satisfied by Lender's execution and delivery of the Loan Documents. This Agreement supersedes and replaces any prior letter of intent

13

**SUBJECT TO LENDER'S REVIEW AND APPROVAL**

with respect to an extension of credit by Lender to Borrowers.

p.  JUDICIAL PROCEEDINGS; WAIVER OF JURY.  BORROWERS AND LENDER ACKNOWLEDGE AND AGREE THAT (a) ANY SUIT, ACTION, OR PROCEEDING, WHETHER CLAIM OR COUNTERCLAIM, BROUGHT OR INSTITUTED BY BORROWERS OR LENDER OR ANY SUCCESSOR OR ASSIGNEE OF BORROWERS OR LENDER, ON OR WITH RESPECT TO THE LOAN, THIS AGREEMENT, THE PROMISSORY NOTE, ANY OF THE OTHER LOAN DOCUMENTS, THE COLLATERAL OR THE DEALINGS OF THE PARTIES WITH RESPECT HERETO OR THERETO SHALL BE TRIED ONLY BY A COURT AND NOT BY A JURY, AND EACH PARTY WAIVES THE RIGHT TO TRIAL BY JURY; (b) EACH WAIVES ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER, IN ANY SUCH SUIT, ACTION, OR PROCEEDING, ANY SPECIAL, EXEMPLARY, PUNITIVE OR CONSEQUENTIAL DAMAGES OR ANY DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES AND REASONABLE ATTORNEY FEES; AND (c) THIS SECTION IS A SPECIFIC AND MATERIAL ASPECT OF THIS AGREEMENT AND THE PROMISSORY NOTE, AND LENDER WOULD NOT EXTEND CREDIT IF THE WAIVERS SET FORTH IN THIS SECTION WERE NOT A PART OF THIS AGREEMENT AND THE PROMISSORY NOTE.

q.  FINAL AGREEMENT.  THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

r.  This Loan Agreement may be signed in multiple counterparts, all of which taken together shall constitute a single document, and any one of which may serve as an original.

s.  In the event the Loan and this Agreement are not approved by the Bankruptcy Court by Interim Order and Final Order, but the Borrowers enter into a financing arrangement with another party that is approved by the Bankruptcy Court, the Lender shall receive reimbursement of its attorney's fees and Expenses as set forth in Section 2 hereof, to be paid to Lender upon closing of the other financing arrangement and which shall constitute an administrative claim,

Signed as of the date first stated above.

**Permico Midstream Partners Holdings, LLC, Debtor,**

14

**SUBJECT TO LENDER'S REVIEW AND APPROVAL**

**a Texas limited liability company Chapter 11 Debtor**


By:_____
William R. Greendyke, Chapter 11 Trustee,
Bankruptcy Case No. 20-32438-H1-11, pending
in the United States Bankruptcy Court for the
Southern District of Texas, Houston Division


**Permico Midstream Partners LLC, a Texas limited liability company, as Debtor**

By:_____
William R. Greendyke, Chapter 11 Trustee,
Bankruptcy Case No. 20-32438-H1-11, pending
in the United States Bankruptcy Court for the
Southern District of Texas, Houston Division

**Integra Midstream Partners, LLC, a Delaware limited liability company**


By_____
_____
Manager

15