## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| PERMICO MIDSTREAM PARTNERS HOLDINGS, LLC, *et al.*, | § | Case No. 20-32437 (MI) |
| | § | |
| | § | (Jointly Administered) |
| Debtors.[1] | § | |

**EMERGENCY MOTION OF WILLIAM R. GREENDYKE, CHAPTER 11 TRUSTEE FOR AUTHORITY TO COMMENCE PIPE SALES PURSUANT TO TERMS OF PLAN SETTLEMENT TERM SHEET AND RELATED RELIEF**

> **EMERGENCY RELIEF HAS BEEN REQUESTED. A HEARING WILL BE CONDUCTED ON THIS MATTER ON MAY 28, 2021 AT 8:30 AM IN COURTROOM 404, 4TH FLOOR, 515 RUSK STREET, HOUSTON, TEXAS 77002. IT IS ANTICIPATED THAT ALL PERSONS WILL APPEAR TELEPHONICALLY AND ALSO MAY APPEAR VIA VIDEO AT THIS HEARING.**
>
> **AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT (832) 917-1510. YOU WILL BE RESPONSIBLE FOR YOUR OWN LONG DISTANCE CHARGES. ONCE CONNECTED, YOU WILL BE ASKED TO ENTER THE CONFERENCE ROOM NUMBER. JUDGE ISGUR'S CONFERENCE ROOM NUMBER IS 954554.**
>
> **YOU MAY VIEW VIDEO VIA GOTOMEETING. TO USE GOTOMEETING, THE COURT RECOMMENDS THAT YOU DOWNLOAD THE FREE GOTOMEETING APPLICATION. TO CONNECT, YOU SHOULD ENTER THE MEETING CODE "JUDGEISGUR" IN THE GOTOMEETING APP OR CLICK THE LINK ON JUDGE ISGUR'S HOME PAGE ON THE SOUTHERN DISTRICT OF TEXAS WEBSITE. ONCE CONNECTED, CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.**
>
> **HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF THE HEARING. TO MAKE YOUR ELECTRONIC APPEARANCE, GO TO THE SOUTHERN DISTRICT OF TEXAS WEBSITE AND SELECT "BANKRUPTCY COURT" FROM THE TOP MENU. SELECT "JUDGES' PROCEDURES," THEN "VIEW HOME PAGE" FOR JUDGE ISGUR. UNDER "ELECTRONIC APPEARANCE" SELECT "CLICK HERE TO SUBMIT ELECTRONIC APPEARANCE". SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.**
>
> **IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST EITHER APPEAR AT THE HEARING OR FILE A WRITTEN RESPONSE PRIOR TO THE HEARING. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**
>
> **RELIEF IS REQUESTED NOT LATER THAN MAY 28, 2021.**

---

[1] The Debtors in these chapter 11 cases and the last four digits of their federal tax identification numbers are as follows: Permico Midstream Partners Holdings, LLC (6374) and Permico Midstream Partners LLC (7902). The location of the Debtors' corporate headquarters and service address is 9301 Southwest Freeway, Suite 308, Houston, TX 77074.

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

William R. Greendyke, the Court-appointed chapter 11 trustee (the "Trustee") for Permico Midstream Partners Holdings, LLC, and Permico Midstream Partners, LLC (collectively, the "Debtors"), hereby files this *Emergency Motion of William R. Greendyke, Chapter 11 Trustee, for Authority to Commence Pipe Sales Pursuant to Terms of Plan Settlement Term Sheet and Related Relief* (the "Motion"). In support of the Motion, the Trustee respectfully states as follows:

### Summary of Relief Requested

1. The Trustee respectfully requests entry of an order authorizing the commencement of sales of certain pipe subject to disputed interests in the Edgen Adversary and the Corpac Adversary (as hereinafter defined) under the conditions agreed to by the parties under the Plan Settlement Term Sheet.[2]

2. The Trustee submits that the requested relief will substantially benefit all parties and the Debtors' estates by maximizing the value of the pipe, reducing the costs of storing and maintaining the pipe, eliminating potentially significant administrative expense and unsecured claims against the estate, and implementing a fulcrum term in the Plan Settlement Term Sheet that will provide a consensual reorganization of the Debtors or sale of substantially all of the Debtors' assets agreed to by the Debtors and the holders of approximately 96% of the Debtors' secured and unsecured debt.

### Emergency Consideration is Necessary

3. The Trustee submits that emergency consideration is necessary to implement the Plan Settlement Term Sheet in accordance with the benefits and bargains set forth therein,

---

[2] The Plan Settlement Term Sheet it attached hereto as **Exhibit A**, and is incorporated by reference herein for all purposes. Capitalized terms not defined herein shall have the meaning set forth in the Plan Settlement Term Sheet.

2

minimize costs and damages associated with the continued storage and maintenance of pipe, and advance the Debtors' cases to close.

## Jurisdiction, Venue, and Authority

4. This Court has jurisdiction over the Motion under 28 U.S.C. § 1334. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Further, the Court has constitutional authority to enter final orders with respect to the requested relief. The Trustee confirms his consent to this Court's entry of a final order on the Motion if it is later determined that, in the absence of the consent of the parties, this Court does not have constitutional authority to enter final orders or judgments.

## Background

### A. The Pipeline Project and Commencement of the Chapter 11 Cases

5. Prepetition, the Debtors were developing a project to build (i) pipelines from the Permian Basin and Eagle Ford shale regions to Corpus Christi, Texas; (ii) two fractionator trains; (iii) an NGL salt cavern storage facility; and (iv) one or more export terminals with spurs to the gas liquids storage and trading hub in Mont Belvieu, Texas (the "Pipeline Project").

6. On May 4, 2020 (the "Petition Date"), chapter 11 petitions for relief were authorized by board members appointed by HGC Midstream Inv, LLC ("HGC"), the Debtors' prepetition lender and investor, after HGC removed the Debtors' prepetition board members.

7. Permico Energia, LLC ("Energia"), the manager and member of debtor Permico Holdings, LLC, disputed the circumstances related to the bankruptcy filings and sought to dismiss the petitions. See Dkt. No. 22.

8. On May 22, 2020, the Court appointed Mr. Greendyke as Trustee and Energia agreed to abate its motion to dismiss. See Dkt. No. 44.

3

9. Since the Trustee's appointment, the Trustee has worked with his advisors, the Debtors' commercial team, and key stakeholders to obtain funding and transportation agreements necessary to successfully reorganize the Debtors and implement a consensual chapter 11 plan.

### B.  The Pipe Adversary Proceedings

10. On May 12, 2020, Corpac Steel Products Corp. ("Corpac") filed a declaratory judgment action regarding a lien asserted by HGC on approximately $95 million in pipe (the "Corpac Pipe") ordered by the Debtors.  Adv. No. 20-03126 (the "Corpac Adversary").

11. On June 2, 2020, Edgen Murray Corporation ("Edgen") filed a declaratory judgment action regarding a similar lien asserted by HGC on approximately $80 million in pipe (the "Edgen Pipe") ordered by the Debtors.  Adv. No. 20-03173 (the "Edgen Adversary" and, along with the Corpac Adversary, the "Adversary Proceedings").

12. Corpac and Edgen both dispute that title to any pipe passed to the Debtors or that HGC has a lien on any pipe.  The pipe has remained stored since the Petition Date, unused, pending an adjudication of the parties' respective rights, claims, and interests in the Adversary Proceedings or a consensual chapter 11 plan.

### C.  The Mediation and Plan Term Sheet

13. On April 13, 2021, the Trustee, HGC, Energia, Corpac, and Edgen (the "Parties") filed a *Joint Emergency Motion for Entry of an Order Appointing a Mediator*, at Bankr. Dkt. No. 223, seeking entry of an order appointing U.S. Bankruptcy Judge Christopher Lopez as mediator for these cases and the Adversary Proceedings.  The Court approved the motion on April 14, 2021.  Bankr. Dkt. No. 225.

14. The Parties commenced mediation on April 27, 2021.  The Parties continued to

4

work with Judge Lopez over the ensuing weeks.

15.     Thanks in large part to the tremendous efforts of Judge Lopez, the Parties signed a plan term sheet providing for a consensual plan process for these cases (the "<u>Plan Settlement Term Sheet</u>").[3] The Plan Settlement Term Sheet contemplates that an Exhibit B concerning the plan treatment for Corpac, and Exhibit C concerning the plan treatment for Edgen will be incorporated and made a part of the Plan Settlement Term Sheet.  The parties are currently negotiating Exhibit B and Exhibit C, and these exhibits are a material part of the Plan Settlement Term Sheet.

16.     The Plan Settlement Term Sheet sets forth the material terms for a proposed chapter 11 plan of reorganization (the "<u>Plan</u>").

17.     Pursuant to the Plan Settlement Term Sheet, the Plan will provide for the recapitalization of the Debtors with an initial $25 million funding commitment, assumption of substantially all of the Debtors' prepetition obligations (including obligations owed to Edgen, Corpac, and HGC), payment of administrative expense claims, settlement of all claims and causes of action between the Parties, and dismissal of the Adversary Proceeding upon the Plan Effective Date (Toggle 1), and certain releases.

18.     Pursuant to the Plan Settlement Term Sheet, the Plan will further include certain milestones for finalization of funding and transportation agreements for the recapitalization transaction provided for under Toggle 1, and provides for the sale of all non-pipe assets under section 363 of the Bankruptcy Code in the event of a milestone default under Toggle 2 and the sale of the pipe pursuant to the terms of this Motion.

19.     As a significant inducement for Corpac and Edgen's agreement to enter into the Plan Settlement Term Sheet and abatement of the Adversary Proceedings pending a milestone

---

[3] The Plan Settlement Term Sheet is summarized herein.  To the extent of any inconsistency between the description contained herein and the Plan Settlement Term Sheet, the terms of the Plan Settlement Term Sheet shall govern.

5

default or the Plan Effective Date, and to implement certain settlements reached therein, the Plan Settlement Term Sheet provides for the filing of this Motion, seeking authority for Edgen and Corpac to commence immediate pipe sales under the terms set forth in the Plan Settlement Term Sheet and the estate settlements provided for therein.

### Pipe Sale Terms and Conditions

20. Consistent with the agreements between the Trustee, Energia, HGC, Corpac, and Edgen reflected in the Plan Settlement Term Sheet, the Trustee respectfully requests entry of an order authorizing the commencement of the sale of pipe as follows:

    a. Edgen shall be authorized and responsible for selling only Edgen Pipe, with notice to HGC, the Trustee and/or Liquidating Trustee.

    b. Corpac shall be authorized and responsible for selling only Corpac Pipe, with notice to HGC, the Trustee and/or Liquidating Trustee.

    c. Corpac may immediately sell up to $8 million of Corpac Pipe and Edgen may immediately sell up to $8 million of Edgen Pipe, each calculated based on the prices set forth in the prepetition Purchase Orders with respect to the Pipe being sold (the "Initial $8 million PO Sale"), and keep all proceeds of such sales free and clear of any liens, claims, and encumbrances of any party, provided that all other Corpac Pipe and Edgen Pipe remain subject to the rights, claims, and interests of the respective parties in the Adversary Proceedings both before and after the Effective Date. Corpac and Edgen shall provide copies of all purchase orders, invoices, statements, and payment receipts related to any sales provided for herein to counsel for the Trustee and HGC within 5 business days of receipt or delivery, and further provide any accounting necessary for the parties to identify such Pipe and the value allocated to the same on the prepetition Purchase Orders. The Trustee and HGC shall execute any necessary and reasonable confidentiality agreement in connection with the receipt of the aforementioned documents, to the extent requested by Corpac and/or Edgen.[4] For the avoidance of

---

[4] Attached hereto as **Exhibit B** and made a part hereof for all purposes is a form of confidentiality agreement agreed to by Corpac, the Trustee and HGC (the "Corpac Confidentiality Agreement"). The Corpac Confidentiality Agreement shall be used for purposes of implementing the provisions of the foregoing sentence. Attached hereto as **Exhibit C** and made a part hereof for all purposes is a form of confidentiality agreement agreed to by Edgen, the Trustee and HGC (the "Edgen Confidentiality Agreement"). The Edgen Confidentiality Agreement shall be used for purposes of implementing the provisions of the foregoing sentence.

        doubt, if Corpac and/or Edgen are able to sell their respective Pipe pursuant to the Initial $8 million PO Sale under the Pipe Sale Motion for a price that is greater than $8 million in the aggregate, respectively, they shall retain any excess proceeds over and above the face amount of such Purchase Orders free and clear of the claims and interests of HGC and the bankruptcy estates.

d.      Corpac and Edgen may each immediately begin selling Pipe beyond the $8 million PO Sale subject to the escrow and lien provisions set forth immediately below and in the Order approving the Motion.

e.      All proceeds from any sale of Corpac Pipe and Edgen Pipe, other than from the Initial $8 million PO Sale, shall be distributed 80% to escrow account one for the Corpac matter and one for the Edgen matter maintained by a third party escrow agent (the "Escrow(s)" or, as to Corpac, the "Corpac Escrow" and, as to Edgen, the "Edgen Escrow") and 20% to the seller of the Pipe (i.e., Corpac or Edgen), until the Escrow amount equals $35 million. For the avoidance of doubt, Edgen and Corpac shall each fund separate $35 million Escrow accounts funded solely from proceeds from the sale of their respective Pipe. For purposes of the foregoing distributions with respect to Edgen pipe only, all actual proceeds received from the sale of Pipe shall be used for purposes of calculating the Edgen Escrow. Once the Edgen Escrow is fully funded, Edgen shall keep all proceeds of any additional sales of Edgen Pipe free and clear of any liens, claims, and encumbrances of any party. Once the Corpac Escrow is fully funded, Corpac shall keep all proceeds of any additional sales of Corpac Pipe free and clear of any liens, claims, and encumbrances of any party. For purposes of the foregoing distributions with respect to Corpac pipe only, the value to be used in determining the proceeds from any such sale shall be calculated based on the prices set forth in the prepetition Purchase Orders with respect to the Pipe being sold and not the actual sales proceeds. To the extent any such Pipe is sold for below the value attributed to such Pipe under the prepetition Purchase Orders, Corpac shall contribute additional funds into the Escrows to make up for any shortfall below 80% of such prepetition Purchase Order value. As an example, if Corpac sells $10 million worth of prepetition Purchase Order value pipe for only $7 million, it will be responsible for contributing all $7 million in proceeds into Escrow and also contributing an additional $1 million to fulfill the shortfall on the 80% escrow contribution obligation. The Retained HGC Lien will continue to encumber the Corpac and Edgen Pipe to the same extent, validity and priority as existed on the petition date (the "Retained HGC Lien") until sold and, thereafter, will attach to the funds held in the Escrows. The Retained HGC Lien shall not attach to that

portion of the sales proceeds (i.e., 20% of sales proceeds) paid to Corpac or Edgen as set forth in this section. Corpac's lender that asserts a lien on the Corpac Pipe being sold shall, subject to any existing liens, have a lien on the proceeds in the Corpac Escrow to the same extent and priority as such lender's liens existed on the Corpac Pipe as of the petition date.

21. In connection with the pipe sales and consistent with the terms of the Plan Settlement Term Sheet, Corpac and Edgen have agreed to each pay the estate $500,000 (under Toggle 1) or $1,250,000 (under Toggle 2),[5] and release the estate of any claims other than with respect to obligations assumed by the Reorganized Debtor (under Toggle 1) or a subordinated rejection damage claims (under Toggle 2).[6] If the proposed Plan (under Toggle 1 or Toggle 2) is not confirmed by Order of the Bankruptcy Court or the Effective Date does not occur, the Trustee settlements and releases with Corpac and Edgen provided for under Toggle 2 will be implemented in accordance with the attached proposed order.

## Basis for Relief

### A. Section 363 and 365 Standards

22. Bankruptcy Code section 363 authorizes the sale of debtor assets if the sale is supported by the debtor's and/or trustee's reasonable business judgment. 11 U.S.C. § 363; *Institutional Creditors of Cont'l Air Lines, Inc. v. Continental Air Lines, Inc., et al. (In re Continental Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("debtor-in-possession or trustee"

---

[5] The settlement payment obligation under Toggle 2 shall be subject to the terms and conditions as provided under the Plan Settlement Term Sheet, including but not limited to the provision providing that, to the extent the Buyer is affiliated with Corpac or Corpac's owners, the Trustee shall release all claims related to the Corpac Adversary Proceedings, including any claims, rights, or interests of the Estate in the Corpac Pipe, including any surcharge rights against the Corpac Pipe, in partial consideration for the sale price, and Corpac shall not be required to make the Corpac Trustee Settlement Payment.

[6] Under Toggle 2, Corpac further reserves any liens (if any) on proceeds of the Sale, solely to the extent Integra Midstream Partners, LLC is not the purchaser, provided, however, that any such lien shall be subordinated to unpaid allowed Administrative Expense Claims, as set forth in the Plan Settlement Term Sheet, solely to the extent such claims are not paid from other sources.

must demonstrate "some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."); *Off. Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) ("Courts are loath to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence.") (quoting *Smith v. v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

23. Courts also apply the business judgment test in determining whether to approve a debtor-in-possession's decision to assume and assign an executory contract. *See Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1312 (5th Cir. 1985).

24. Section 363(f) further authorizes the Court to approve the sale of property free and clear of any interest in the property if any of the circumstances set forth under section 363(f)(1)-(5) apply. 11 U.S.C. § 363(f); *In re C-Power Prods., Inc.*, 230 B.R. 800 (Bankr. N.D. Tex. 1998); *In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988).

25. This Court's authority under sections 363 and 365 is supplemented by section 105(a), which provides in relevant part that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title . . ." 11 U.S.C. § 105(a). The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *See In re Food Barn Stores, Inc.*, 107 F.3d 558, 564-565 (8th Cir. 1997).

  **B.**  **Rule 9019 Standard**

26. Bankruptcy Rule 9019(a) authorizes settlements if they are "fair and equitable and in the best interest of the estate. " *In re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980).

27. Courts consider the following factors when evaluating whether a compromise is fair and equitable:

    a. The probabilities of ultimate success should the claim be litigated, with due consideration for uncertainty in fact and law;

      b. An educated estimate of (i) the complexity, expense, and likely duration of such litigation; (ii) possible difficulties of collecting on any judgment which might be obtained; and (iii) all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise; and

      c. The comparison of the terms of the settlement and compromise with the likely rewards of litigation.

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968). In addition, the Fifth Circuit has identified two additional factors that bear on the wisdom of the compromise:

      a. Whether the compromise serves "the paramount interest of creditors with proper deference to their reasonable views." *Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop., Inc. (In re Cajun Elec. Power Coop.)*, 119 F.3d 349, 356 (5th Cir. 1997).

      b. The extent to which the settlement is truly the product of arms-length bargaining and not of fraud or collusion. *In re Foster Mortgage Corp.*, 68 F.3d 914, 917 (5th Cir. 1995).

28. The movant need only show that the settlement falls within the "range of reasonable litigation alternatives." *In re WT Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983). The Court "is not to decide the numerous questions of law and fact raised" by the compromise, but, instead, is "to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *ARS Brook, LLC v. Jalbert (In re SErviSense.com, Inc.)*, 382 F.3d 68, 72 (1st Cir. 2004).

    **C.**     **Application of Reasonable Business Judgment Standard to the Pipe Sale Motion**

29. Authority to commence immediate pipe sales will substantially benefit all parties and the Debtors' estates. The pipe has sat idle in storage yards for nearly two years. Further, under the recapitalization plan (Toggle 1), the Reorganized Debtors are unlikely to be able to use the pipe until early 2022. Every day the pipe remains idle, the pipe is exposed to potential

deterioration or loss and potential increased liability of the Debtors' estates and/or Reorganized Debtors on account of warehouse fees, insurance, and taxes. Further, the Trustee understands that both Corpac and Edgen have opportunities to resell their respective pipe at favorable prices that would substantially mitigate against any damages Corpac and Edgen have incurred based on delays in the Project. Continued idling of the pipe until a Plan Effective Date or judgment in the Adversary Proceedings is unproductive, not necessary to protect the Parties' and estates' respective rights, claims, and interests in the pipe, and would only harm all interested parties and the estates.

30. In addition, the settlement and releases contemplated under the Plan Settlement Term Sheet would reduce the costs and risks of litigation, eliminate potentially significant administrative expense claims against the Debtors' estates to the extent the pipe was determined to be property of the Debtors' estate, and further, under Toggle 2 subordinate any claims of Corpac and Edgen that otherwise would otherwise constitute approximately 96% of all general unsecured claims.

31. Accordingly, the Trustee submits that a sound business purpose supports permitting the pipe sales and approving the settlements between the Debtors' estates and Corpac and Edgen under the terms set forth in the Plan Settlement Term Sheet and herein.

## **Reservation of Rights**

32. Nothing in this Motion constitutes an admission by any party or a judicial determination regarding title to Corpac Pipe or Edgen Pipe or any related claims, defense, or issues raised in any proceeding, including the adversary proceedings subject to the Plan Settlement Term Sheet; all such shall claims, defenses, and issues are expressly reserved for determination in the respective proceeding, subject to any settlements and/or releases that become effective under the Plan or are otherwise approved by this Court.

## Conclusion

For these reasons, the Trustee respectfully requests that the Court enter the proposed order, substantially in the attached form, granting the requested relief and granting such other and further relief as is just and proper.

Dated: May 26, 2021
Houston, Texas

Respectfully submitted,

**NORTON ROSE FULBRIGHT US LLP**

*/s/ Jason L. Boland*
Jason L. Boland (SBT 24040542)
Bob B. Bruner (SBT 24062637)
Julie Goodrich Harrison (SBT 24092434)
Maria Mokrzycka (SBT 24119994)
1301 McKinney Street, Suite 5100
Houston, Texas 77010
Telephone: (713) 651-5151
Facsimile: (713) 651-5246
Email: jason.boland@nortonrosefulbright.com
Email: bob.bruner@nortonrosefulbright.com
Email: julie.harrison@nortonrosefulbright.com
Email: maria.mokrzycka@nortonrosefulbright.com

*Counsel to William R. Greendyke,*
*Chapter 11 Trustee*

## Certificate of Service

I hereby certify that on May 26, 2021, a true and correct copy of the foregoing Motion was served by the CM/ECF system for the United States Bankruptcy Court for the Southern District of Texas on all parties registered to receive such service.

*/s/ Maria Mokrzycka*
Maria Mokrzycka

**Certificate of Accuracy Pursuant to Local Rule 9013-1(i)**

I certify that the facts and circumstances described in the above pleading giving rise to the emergency request for relief are true and correct to the best of my knowledge, information, and belief.

*/s/ Jason L. Boland*
Jason L. Boland
