**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| PERMICO MIDSTREAM PARTNERS | § | Case No. 20-32437 (MI) |
| HOLDINGS, LLC, *et al.*, | § | |
| | § | (Jointly Administered) |
| Debtors.[1] | § | |

**EMERGENCY MOTION OF WILLIAM R. GREENDYKE, CHAPTER 11 TRUSTEE, FOR ENTRY OF AN ORDER AUTHORIZING POST-EFFECTIVE DATE PAYMENT OF PREPETITION CLAIMS OF CERTAIN CRITICAL VENDORS IN CONNECTION WITH THE TOGGLE 1 PLAN AND GRANTING RELATED RELIEF**

> **EMERGENCY RELIEF HAS BEEN REQUESTED. A HEARING WILL BE CONDUCTED ON THIS MATTER ON AUGUST 20, 2021 AT 10:00 AM IN COURTROOM 404, 4TH FLOOR, 515 RUSK ST., HOUSTON, TX 77002. IT IS ANTICIPATED THAT ALL PERSONS WILL APPEAR TELEPHONICALLY AND ALSO MAY APPEAR VIA VIDEO AT THIS HEARING.**
>
> **AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT (832) 917-1510. YOU WILL BE RESPONSIBLE FOR YOUR OWN LONG-DISTANCE CHARGES. ONCE CONNECTED, YOU WILL BE ASKED TO ENTER THE CONFERENCE ROOM NUMBER. JUDGE ISGUR'S CONFERENCE ROOM NUMBER IS 954554.**
>
> **YOU MAY VIEW VIDEO VIA GOTOMEETING. TO CONNECT, YOU SHOULD ENTER THE MEETING CODE "JUDGEISGUR" IN THE GOTOMEETING APP OR CLICK THE LINK ON JUDGE ISGUR'S HOME PAGE ON THE SOUTHERN DISTRICT OF TEXAS WEBSITE. ONCE CONNECTED, CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.**
>
> **HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF THE HEARING. TO MAKE YOUR ELECTRONIC APPEARANCE, GO TO THE SOUTHERN DISTRICT OF TEXAS WEBSITE AND SELECT "BANKRUPTCY COURT" FROM THE TOP MENU. SELECT "JUDGES' PROCEDURES," THEN "VIEW HOME PAGE" FOR JUDGE ISGUR. UNDER "ELECTRONIC APPEARANCE" SELECT "CLICK HERE TO SUBMIT ELECTRONIC APPEARANCE". SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.**
>
> **IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST EITHER APPEAR AT THE HEARING OR FILE A WRITTEN RESPONSE PRIOR TO THE HEARING. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**
>
> **RELIEF IS REQUESTED NOT LATER THAN AUGUST 20, 2021.**

---

[1] The Debtors in these chapter 11 cases and the last four digits of their federal tax identification numbers are as follows: Permico Midstream Partners Holdings, LLC (6374) and Permico Midstream Partners LLC (7902). The location of the Debtors' corporate headquarters and service address is 9301 Southwest Freeway, Suite 308, Houston, TX 77074.

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

William R. Greendyke, the Court-appointed chapter 11 trustee (the "Trustee") for Permico Midstream Partners Holdings, LLC and Permico Midstream Partners (collectively, the "Debtors"), files this *Emergency Motion of William R. Greendyke, Chapter 11 Trustee, for Entry of an Order Authorizing Post-Effective Day Payment of Prepetition Claims of Certain Critical Vendors in Connection with the Toggle 1 Plan and Granting Related Relief* (the "Motion"). In support of this Motion, the Trustee respectfully states as follows:

## RELIEF REQUESTED

1. By this Motion, and in aid of implementation of the Plan which is currently set for confirmation on August 20, 2021, the Trustee seeks entry of an order (the "Order"), substantially in the form attached hereto, authorizing the Reorganized Debtors to pay to Critical Vendors an amount not to exceed an aggregate amount of $500,000 from reserved working capital in accordance with the Plan Settlement Term Sheet and in advance of the Financial Close date, solely with respect to the Toggle 1 Plan (to the extent such Plan is approved and becomes effective).[2]

2. The Trustee also requests that the Order authorize the Reorganized Debtors, as applicable, to require that: (a) each Critical Vendor maintain or apply, as applicable, Customary Trade Terms[3] through Financial Close and continue to provide goods or services pursuant to the terms of the proposed Critical Vendor Agreement attached as **Exhibit 1** to the Order; and (b) if a Critical Vendor, after receiving a payment under the Order, ceases to provide Customary Trade

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the *Combined Disclosure Statement and Joint Plan of Permico Midstream Partners Holdings, LLC, et al.* (as applicable, the "Disclosure Statement" or "Plan") or this Motion.

[3] As used herein, "Customary Trade Terms" means, with respect to a Critical Vendor, (a) the normal and customary trade terms, practices, and programs that were most favorable to the Debtors and in effect between such Critical Vendor and the Debtors in the 12-month period prior to the Petition Date or (b) such other trade terms as agreed by the Reorganized Debtors and such Critical Vendor.

- 2 -

Terms and comply with the Critical Vendor Agreement, then the Reorganized Debtors may, in their sole discretion, deem such payment as unauthorized by the Order and request and require return of such payment in accordance with the Order.

3. The Trustee further requests that the Order bar any Critical Vendor payments to insiders or affiliates of the Debtors and require the Reorganized Debtors to provide the Trustee with reasonable notice of any Critical Vendor payments that occur prior to Financial Close.

4. While the proposed Critical Vendor payments are provided for under the Plan Settlement Term Sheet attached and incorporated into Disclosure Statement and Plan, out of an abundance of caution, and for the purpose of further disclosure and to aid in the implementation of the proposed Critical Vendor payments under the Disclosure Statement and Plan in a fair and orderly fashion, the Trustee respectfully files this Motion requesting the relief sought herein.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).

6. Venue of the Debtors' cases in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7. The statutory predicates for the relief requested herein are Sections 105(a) and 107(b) of Title 11 of the United States Code (the "Bankruptcy Code"), Rule 9018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rules 9037-1 and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules"), and the Procedures for Complex Cases in the Southern District of Texas (the "Complex Rules").

8. This Court has constitutional authority to enter final orders with respect to the relief requested herein. The Trustee further confirms his consent to this Court's entry of final orders or

judgments on this Motion if it is later determined that, in the absence of the consent of the parties, this Court does not have constitutional authority to enter final orders or judgments.

## FACTUAL BACKGROUND

9. The Debtors are Texas limited liability companies engaged in developing a project to build (i) pipelines from the Permian Basin and Eagle Ford shale regions to Corpus Christi, Texas, (ii) two fractionator trains, (iii) an NGL salt cavern storage facility, and (iv) one or more export terminals with spurs to the gas liquids storage and trading hub in Mont Belvieu, Texas (collectively, the "Project").

10. On May 4, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas (the "Court").

11. On May 18, 2020, the Office of the United States Trustee (the "U.S. Trustee") filed a *Notice of Appointment of Chapter 11 Trustee* and corresponding *Application for Order Approving Appointment of Chapter 11 Trustee*, seeking approval of Mr. Greendyke to serve as the Trustee in these cases [Dkt. Nos. 36 & 37].

12. On May 22, 2020, the Court entered its *Order Approving Appointment of Chapter 11 Trustee in the Jointly Administered Permico Midstream Partners Holdings, LLC Cases* (the "Trustee Order"), approving the appointment of Mr. Greendyke as Trustee [Dkt. No. 44].

13. On May 25, 2021, the Trustee, HGC, Energia, Corpac, and Edgen (collectively, the "Plan Proponents") signed a plan term sheet providing for a consensual plan process for these cases (the "Plan Settlement Term Sheet"). That Plan Settlement Term Sheet was incorporated into the Disclosure Statement and Plan.

- 4 -

14. On June 25, 2021, the Plan Proponents filed a motion seeking conditional approval of the Disclosure Statement, which was granted on July 15, 2021. A hearing on confirmation of the Plan is currently set for August 20, 2021 at 10:00 a.m.

15. Pursuant to the Plan Settlement Term Sheet, $500,000 of the retained working capital from the Initial Contribution is to be set aside for distributions to certain of the Debtors' vendors who provide essential and specialized goods and services necessary to allow the Debtors to reach Financial Close under the Plan (collectively, the "Critical Vendors").

16. The Debtors and Permico Founders, the entity that will acquire 100% of the Reorganized Debtors under Toggle 1 of the Plan, with the assistance of their advisors, have commenced discussions with certain of the Debtors' vendors and service providers and understands that certain of such vendors and service providers may not continue to provide goods and services necessary for the Reorganized Debtors to reach Financial Close without payment of all or a portion of their prepetition claim. The loss of goods or services for certain Critical Vendors, particularly at this critical stage, could materially harm the Debtors' businesses prior to Financial Close.

17. For these reasons, the Plan Proponents, pursuant to the Plan Settlement Term Sheet, agreed to allocate up to $500,000 of the Initial Contribution reserved for working capital to payment for Critical Vendors to avoid the irreparable harm to the Debtors' businesses and goodwill that may occur if the critical goods and services were not provided to the Reorganized Debtors through Financial Close. While the claims of the Critical Vendors are being assumed under the Plan by the Reorganized Debtors, and would be paid in full post-confirmation, payment on account of these claims may not occur until February 2022, the projected Financial Close Date. Therefore, to minimize the risk that Critical Vendors cease providing essential goods and services during the

period from the Effective Date through Financial Close, the Trustee seeks authorization to allow the Reorganized Debtors to make payments to such Critical Vendors, solely with respect to the Toggle 1 Plan to the extent such Plan is approved and becomes effective, upon agreement that each Critical Vendor will maintain or apply Customary Trade Terms through Financial Close pursuant to the Critical Vendor Agreement, and under the terms and subject to the limitations provided for in the Order, including notice to the Trustee and exclusion of any insider or affiliate from the right to receive payments under this Order.

## **BASIS FOR RELIEF**

### A. The Court May Authorize Payment to Critical Vendors Under Section 363 of the Bankruptcy Code and the "Necessity of Payment" Doctrine.

18. Section 363(b)(1) of the Bankruptcy Code empowers the Court to allow a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). A debtor's decision to use, sell, or lease assets outside the ordinary course of business must be based upon the sound business judgment of the debtor. *See, e.g., Inst'l Creditors of Cont'l Airl Lines, Inc. v. Cont'l Air Lines, Inc. (In re Cont'l Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."); *In re Crutcher Res. Corp.*, 72 B.R. 628, 631 (Bankr. N.D. Tex. 1987) ("A Bankruptcy Judge has considerable discretion in approving a § 363(b) sale of property of the estate other than in the ordinary course of business, but the movant must articulate some business justification for the sale . . . .").

19. Courts emphasize that the business judgment rule is not an onerous standard and that it "is flexible and encourages discretion." *In re ASARCO, L.L.C.*, 650 F.3d 593, 601 (5th Cir. 2011). "Great judicial deference is given to the [debtor's] exercise of business judgment." *GBL*

*Holding Co., Inc. v. Blackburn/Travis/Co.e, Ltd. (In re State Park Bldg. Grp., Ltd.)*, 331 B.R. 251, 254 (N.D. Tex. 2005). As long as a transaction "appears to enhance a debtor's estate, court approval of a debtor in possession's decision to [enter into the transaction] should only be withheld if the debtor's judgment is clearly erroneous, too speculative, or contrary to the Bankruptcy Code." *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985) (citation and internal quotation marks omitted).

20. Moreover, section 363(c) of the Bankruptcy Code authorizes a debtor in possession operating its business pursuant to section 1108 of the Bankruptcy Code to "enter into transactions . . . in the ordinary course of business without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). One purpose of section 363(c) of the Bankruptcy Code is to provide a debtor with the flexibility to engage in the ordinary course transactions required to operate its business without undue supervision by its creditors or the court. *See, e.g., In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992) (citations omitted) ("Section 363 is designed to strike [a] balance, allowing a business to continue its daily operations without excessive court or creditor oversight and protecting secured creditors and others from dissipation of the estate's assets."). Included within the purview of section 363(c) of the Bankruptcy Code is a debtor's ability to continue "routine transactions" necessitated by a debtor's business practices. *See, e.g., Amdura Nat. Distrib. Co. v. Amdura Corp. (In re Amdura Corp.)*, 75 F.3d 1447, 1453 (10th Cir. 1996) (citations omitted) ("A debtor in possession under Chapter 11 is generally authorized to continue operating its business."); *In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 796 (Bankr. D. Del. 2007) (citations omitted) (noting that courts have shown a reluctance to interfere in a debtor's making of routine, day-to-day business decisions).

21. The Bankruptcy Code does not define "ordinary course of business." In determining whether a transaction qualifies as "ordinary course," the courts use the "horizontal" dimension test (*i.e.*, "the way businesses operate within a given industry") and the "vertical" dimension test (*i.e.*, whether the transaction is consistent with the reasonable "expectations of creditors"). *See Denton Cty. Elec. Coop., Inc. v. Eldorado Ranch, Ltd. (In re Denton Cty. Elec. Coop., Inc.)*, 281 B.R. 876, 882 & n.12 (Bankr. N.D. Tex. 2002) (collecting cases). "In general, under the vertical test, courts look at whether the transaction subjects a hypothetical creditor to a different economic risk than existed when the creditor originally extended credit. Under the horizontal test, in general courts look at whether the transaction was of the sort commonly undertaken by companies in the industry. The primary focus is on the debtor's pre-petition business practices and conduct." *In re Patriot Place, Ltd.*, 486 B.R. 773, 793 (Bankr. W.D. Tex. 2013).

22. The nature of the Debtors' businesses and the extent of their operations through Financial Close make the continued receipt of goods and services from the Critical Vendors essential. The prompt payment of claims of the Critical Vendor is crucial for the orderly and efficient operation of the Debtors' businesses during the period from the Effective Date through Financial Close. Failure to pay for these essential goods and services would cause irreparable harm to the Debtors' businesses.

23. Accordingly, the Trustee believes that the requested relief represents a sound exercise of the Trustee's business judgment, is necessary to avoid immediate and irreparable harm, and is justified under section 363(b) of the Bankruptcy Code. Satisfaction of prepetition obligations owed to the Critical Vendors is vital to the Debtors' continued post-Effective Date operations.

24. Courts in this and other jurisdictions have authorized similar relief in other chapter 11 cases. *See, e.g.*, *In re Whiting Petroleum Corp.*, No. 20-32021 (DRJ) (Bankr. S.D. Tex. Apr. 21, 2020); *In re Diamond Offshore Drilling, Inc.* No. 20-32307 (DRJ) (Bankr. S.D. Tex. May 27, 2020); *In re Hornbeck Offshore Services*, *Inc.* No. 20-32679 (DRJ) (Bankr. S.D. Tex. June 11, 2020; *In re Arena Energy, LP*, No. 20-34215 (MI) (Bankr. S.D. Tex. Sept. 25, 2020); *In re Benevis Corp.* No. 20-33918 (MI) (Bankr. S.D. Tex. Sept. 1, 2020).

25. Finally, the Trustee submits that payment of the claims of the Critical Vendor is necessary and appropriate and is authorized under section 105(a) of the Bankruptcy Code pursuant to what is referred to interchangeably as the 'doctrine of necessity" or "necessity of payment rule". The doctrine of necessity functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code. *See In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (recognizing the "doctrine of necessity"); *In re Mirant Corp.*, 296 B.R. 427, 429 (Bankr. N.D. Tex. 2003) (same and citing *In re CoServ*); *see also In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Ci. 1981) (holding that a court may authorize payment of prepetition claims if such payment is essential to debtor's continued operation); *In re Just for Feet, Inc.*, 242 B.R. 821, 824-25 (D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code "provides a statutory basis for payment of pre-petition claims" under the doctrine of necessity).

26. The Court's power to utilize the "doctrine of necessity" in chapter 11 cases derives from the Court's inherent equity powers and its statutory authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). "[T]he debtor-in-possession's role as the equivalent of a trustee under § 1107(a) and its duty to protect the going-concern value of an operating business in a Chapter 11

provid[s] the 'bridge that makes application to the Doctrine of Necessity 'necessary or appropriate to carry out the provisions of' the Bankruptcy Code.'" *In re CEI Roofing, Inc.*, 315 B.R. 50, 56 (Bankr. N.D. Tex. 2004) (citing *in re CoServ*, 273 B.R. at 497). Accordingly, the Court has expansive equitable powers to fashion any order or decree that is in the interest of preserving or protecting the value of the Debtors' assets on a post-Effective Date basis. *See In re Young*, 416 F. App'x 392, 398 (5th Cir. 2011) (recognizing that "[s]ection 105(a) of Title 11 permits the bankruptcy court to exercise broad authority"); *In re Nixon*, 404 F. App'x 575, 578 (3d Cir. 2010) (citation omitted) ("It is well settled that the court's power under § 105(a) is broad."); *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 236 (3d Cir. 2004) (citation omitted) (noting that section 105 of the Bankruptcy Code "has been construed to give a bankruptcy court 'broad authority' to provide equitable relief appropriate to assure the orderly conduct of reorganization proceedings"); *In re Trevino*, 599 B.R. 526, 542-43 (Bankr. S.D. Tex. 2019) (noting that the bankruptcy court has "broad authority" under section 105(a) of the Bankruptcy Code); *In re Padilla*, 379 B.R. 643, 667 (Bankr. S.D. Tex. 2007) (citation omitted ("Section 105(a) gives bankruptcy courts broad authority to take actions necessary and appropriate for administering and enforcing the Bankruptcy Code and . . . 'authorizes a bankruptcy court to fashion such orders as are necessary to further the purposes of the substantive provisions of the Bankruptcy Code.'"); *see also Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440, 1443 (9th Cir. 1986) (citation omitted) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code.").

27. To avoid the irreparable harm that would occur absent payment to the Critical Vendors, and in aid to implementation of the Plan, the Trustee requests that the Court authorize the Reorganized Debtors to exercise their reasonable business judgment and pay such Critical

Vendors, in their discretion, in an aggregate amount of up to $500,000 of reserved working capital, solely with respect to the Toggle 1 Plan to the extent such Plan is approved and becomes effective, and under the terms and subject to the limitations provided for in the Order.

## **PRAYER**

WHEREFORE, the Trustee respectfully requests that the Court enter an order, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

*[Remainder of Page Intentionally Left Blank]*

Dated: August 17, 2021
Houston, Texas

Respectfully submitted,

**NORTON ROSE FULBRIGHT US LLP**

*/s/ Jason L. Boland*
Jason L. Boland (SBT 24040542)
Bob B. Bruner (SBT 24062637)
Julie Goodrich Harrison (SBT 24092434)
Maria Mokrzycka (SBT 24119994)
1301 McKinney Street, Suite 5100
Houston, Texas 77010
Telephone: (713) 651-5151
Facsimile: (713) 651-5246
Email: jason.boland@nortonrosefulbright.com
Email: bob.bruner@nortonrosefulbright.com
Email: julie.harrison@nortonrosefulbright.com
Email: maria.mokrzycka@nortonrosefulbright.com

*Counsel to William R. Greendyke,*
*Chapter 11 Trustee*

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that a true and correct copy of the foregoing document was served upon the counsel and parties of record, electronically through the Bankruptcy Court's Electronic Case Filing System on those parties that have consented to such service on the August 17, 2021.

*/s/ Julie Harrison*
Julie Harrison